**COMMERCIAL STANDARD FIRE & MARINE CO., Appellant,**

v.

**COMMISSIONER OF INSURANCE et al., Appellees.**

No. 11595.

Court of Civil Appeals of Texas.

Austin.

June 12, 1968.

Buck & Buck, Fort Worth, Small, Herring, Craig, Werkenthin & Shannon, Fred B. Werkenthin, Austin, for appellant.

Crawford C. Martin, Atty. Gen., George Cowden, First Asst. Atty. Gen., A. J. Carubbi, Jr., Staff Legal Asst. Atty. Gen., Sam Kelley and Ralph R. Rash, Asst. Attys. Gen., for appellees.

PHILLIPS, Chief Justice.

This case involves taxes allegedly due the State under the gross premium receipts tax levied by Vernon's Tex.Rev.Civ.Ann. art. 7064.

Appellant first brought suit by means of protest[1] in cause number 143,150 for taxes paid for the year ending December 31, 1963. In this suit appellant took the position that (1) the Insurance Commission had improperly assessed appellant's tax due the State by declaring that Tex.Rev.Civ. Stat.Ann. art. 7064 requires a comparison of the insurance company's investment in "Texas securities" with appellant's investment in "similar securities" in the State in which the company had the second highest percentage of its admitted assets invested if, as in the case at bar, the company had the highest percentage of admitted assets invested in Texas; (2) that the Commissioner was in error in holding that premium notes of Texas residents are not "Texas securities" within the meaning of Tex.Rev.Civ.Stat.Ann. art. 7064.

The trial court held that it was without jurisdiction to consider appellant's proposition number 2, stated above, because this ground had not been included in the letter of protest to the Insurance Commissioner, however, after trial and before judgment, the court indicated that he would hold against appellant on its proposition number 1, stated above, which was the ground of protest stated in appellant's letter.

Appellant then secured legislative consent to sue the State claiming both of the abovementioned grounds as its causes of action. This consent to sue was obtained through Senate Concurrent Resolution No. 22. Appellant then filed suit against the Commissioner, et al, under the authority of the resolution in Cause No. 159,727. In this suit appellant pleaded both of the abovementioned propositions 1 and 2.

Inasmuch as judgment had not been rendered in the protest suit, the trial court consolidated these two cases for all purposes, the case was tried and the court held against appellant on both substantive propositions 1 and 2, hence this appeal.

We affirm.

I.

Appellant is before this Court on four points of error, however, before disposing of these points we are faced with sixteen cross-points of error brought by the State. Since these cross-points go to the jurisdiction of the court we will dispose of them first.

The State's cross-points one and two, briefed together, are the error of the trial court in taking jurisdiction of appellant's protest suit, Cause No. 143,150, because appellant failed to exhaust its administrative remedies; because appellant wholly failed to allege and prove jurisdictional facts, to wit, an action or order by the State Board of Insurance adversely to the appellant with respect to the grounds alleged in the letter of protest and in the suit.

We overrule these points.

The State challenges the jurisdiction of the court on the grounds that the appellant had never exhausted its administrative remedies under paragraph (d) of Article 1.04 of the Insurance Code, V.A.T.S., and that appellant had failed to allege that the defendant members of the State Board of Insurance had ever entered any order or acted in anywise to the detriment of appellant; and that appellant's letter of protest was addressed to the defendant Commissioner of Insurance.

The protest statute, Article 1.05 of Title 122A, provides for protest to be made to

1. Tex.Rev.Civ.Stat.Ann. arts. 1.05 Taxation-General, v. A.T.S. and 7057b.

and suit filed against the public official charged with the duty of collecting such tax or fees. Article 1.04 of the Insurance Code requires appeal to the Insurance Board from any order of the Commissioner before an appeal is filed in the district court. The facts in this case show that demand for payment of the tax was made by the Commissioner of Insurance, not the State Board of Insurance.

Article 1.05, Title 122A[2] describes the Commissioner as the one requiring the payment of the tax, the one charged with the duty of collecting the tax and the person to receive the written protest along with the required tax payment.

▇ Any inconsistency with the protest statute that may appear in Article 1.04 of the Insurance Code, and there are numerous differences which are patent and will not be examined here, must yield to the protest statute as it is a later enactment, and also being a special provision, its provisions are controlling over the earlier and general provisions of the Insurance Code. 53 Tex.Jur.2d, Statutes Sec. 161, pp. 232–34.

The State's cross-points three and four, briefed together, are the error of the trial court in allowing the appellant, after trying and losing its protest suit, to file and consolidate with said protest suit its duress suit, Cause No. 159,727, involving the same subject matter as the protest suit; the error of the court in assuming jurisdiction of the duress suit and particularly the new grounds of recovery contained therein, which grounds were not contained in the original letter of protest, because said duress suit constituted a mere device of amending the protest suit and adding such new grounds, which procedure was without legislative consent.

We overrule these points.

▇ ˙ The State's cross-point three, above, is somewhat misleading in that it states that the appellant had tried and lost its protest suit. This is not the case. As we pointed out above in our statement of the case, the original suit had never gone to judgment. Here the State contends that the protest procedure prescribed by Article 1.05 of the Tax Code is the exclusive remedy available to the appellant. Such is not the case. Appellant brought the duress suit premised on the rule that where a tax is paid under duress it is proper for the Legislature to authorize suit. National Biscuit Company v. State, 134 Tex. 293, 135 S.W.2d 687 (1940); Union Central Life Insurance Co. v. Mann, 138 Tex. 242, 158 S.W.2d 477 (Tex.1941);

2. Article 1.05 Title 122A provides in part:
"(1) Protest. Any person * * * who may be required to pay to the head of any department of the State Government any * * * tax * * * and who believes or contends that the same is unlawful and that such public official is not lawfully entitled to demand or collect the same shall, nevertheless, be required to pay such amount as such public official charged with the collection thereof may deem to be due the State, and shall be entitled to accompany such payment with a written protest, setting out fully and in detail each and every ground or reason why it is contended that such demand is unlawful or unauthorized.
(2) Suits for recovery of taxes or fees. Upon the payment of such taxes or fees, accompanied by such written protest, the taxpayer shall have ninety (90) days from said date within which to file suit for the recovery thereof in any court of competent jurisdiction in Travis County, Texas, and none other. Such suit shall be brought against the public official charged with the duty of collecting such tax or fees, the State Treasurer and the Attorney General. The issues to be determined in such suit shall be only those arising out of the grounds or reasons set forth in such written protest as originally filed. The right of appeal shall exist as in other cases provided by law. * *
(4) Lists remitted to State Treasurer. It shall be the duty of such public official to transmit daily to the State Treasurer all money so received, with a detailed list of all those remitting same, and he shall inform the State Treasurer in writing that such money was paid under protest as hereinabove provided. * * * "

State of Texas v. Connecticut General Life Insurance Co., 382 S.W.2d 745 (Tex.1964). These cases all expressly hold that the remedy by way of protest is not exclusive, but a cumulative remedy and that with legislative consent a suit, as in the instant case, may be brought.

The State's fifth and sixth cross-points, briefed together, are the error of the trial court in assuming jurisdiction of the duress suit because the same was a suit against the State of Texas with a simultaneous motion to consolidate the same with a lawsuit, to wit, the protest suit, which had already been tried, which procedure was not authorized nor consented to by the Legislature of the State of Texas, and, therefore, was without legislative consent; the error of the court in assuming jurisdiction of the duress suit because the funds held in the statutory suspense account have not been "recovered" by the State, which was the only circumstance under which the legislative consent was given.

We overrule these points.

■ The consolidation of the duress suit with the pending protest suit in no way vitiates or runs counter to the consent granted by the Legislature. Obviously consent resolutions do not purport to govern all of the procedural aspects of lawsuits brought pursuant to consent agreements. The failure of the Legislature to mention this subject in no way lessens the otherwise existing authority of the courts to consolidate two pending matters essentially the same subject matter.

■ The only office of a judgment entered pursuant to the Senate Concurrent Resolution would be to determine the appellant's legal rights to recover the funds in question. The fact that technically the funds may be in a suspense account does not make them any less the State's funds. The legislative consent to sue is not to be given a narrow or technical construction. State v. Hale, 136 Tex. 29, 146 S.W.2d 731 (1941).

The State's seventh cross-point is the error of the trial court in assuming jurisdiction of appellant's duress suit under the authority of Senate Concurrent Resolution No. 22, 60th Legislature, Regular Session, which was not effective at the time of the filing of said suit.

We overrule this point.

The State contends that the resolution does not take effect until 90 days after the Legislature adjourned and cites Art. III, Sec. 39 of the Texas Constitution, Vernon's Ann.St. in support of this argument.

Art. III, Sec. 39 provides that "no law * * * shall take effect or go into force until ninety days after the adjournment of the session * * *."

■ The Constitution draws a clear distinction between "laws" and "Resolutions." Art. III, Sec. 30 provides that no law shall be passed except by bill. The Constitution places bills and resolutions in separate and distinct categories. Art. III, Sec. 34; State v. Delesdenier, 7 Tex. 76. Article 4, Sec. 15 of the Constitution indicates that a resolution takes effect when the Governor signs it.

The State's eighth, ninth and tenth cross-points, briefed together, are the error of the trial court in assuming jurisdiction of the duress suit since the legislative consent, if any, was granted by a resolution which was void under the provisions of Section 51 of Article III of the Texas Constitution because said resolution constitutes a grant of public money to the appellant, a private corporation; that it was granted by a resolution which constitutes a retroactive law and is therefore unconstitutional and void under the provisions of Section 1 of Article II of the Constitution of the State of Texas; that the resolution constitutes an encroachment of the Legislature upon the judiciary and is therefore unconstitutional and void under the provisions of Section 16 of Article I of the Constitution of Texas.

We overrule these points.

The State contends that a double recovery is possible under this lawsuit; however, it seems to have confused remedies with rights of recovery. Both the protest procedure and the duress procedure are merely procedures or remedies.

■ With respect to the retroactive law argument is that the legislative permission to sue is purely a procedural matter.

■ Likewise, it is difficult to see how action by the Legislature merely providing a remedy or procedure in any way interferes with the judiciary. The State's cross-points eleven, twelve, thirteen and fourteen, briefed together are the errors of the court in assuming jurisdiction of the duress suit since the legislative consent, if any, was granted by a resolution which attempts to provide discriminatory and unequal occupation taxes in violation of Sections 1 and 2 of Article VIII and Section 3 of Article I of the Constitution of the State of Texas; since the legislative consent, if any, was granted by a resolution which constitutes a special law granting plaintiff relief from taxation in violation of the provisions of Section 56 of Article III of the Constitution of Texas; since the legislative consent, if any, was granted which is void under Section 56 of Article III of the Constitution of Texas, because said resolution constitutes a special law refunding moneys legally deposited in the treasury, to wit, the suspense account which will be deposited if appellant does not prevail in the protest suit; since the legislative consent, if any, was granted by a resolution which constitutes a special law regulating the practice and jurisdiction of the courts and changing the methods of collecting alleged debts and changing the method of enforcing judgments and is, therefore, unconstitutional and void under the provisions of Section 56 of Article III of the Constitution.

We overrule these points.

■ The consent to sue does not provide discriminatory and unequal occupation taxes nor is it a special law nor is it violative of Section 56 of Article III. All that appellant has obtained from the Legislature is permission to sue the State and attempt to establish that the taxes paid by appellant were illegally collected and appellant in no event will be allowed to recover anything from the State of Texas unless it can finally establish that the State illegally collected the taxes in question. It is difficult to conceive of any general constitutional policy against this procedure and the ends it attempts to serve.

The State's fifteenth cross-point of error is that of the trial court in assuming jurisdiction of the duress suit since the legislative consent, if any, was granted by a resolution purporting to change, modify, alter and suspend pre-existing law by a resolution, which may be done only by a Bill as prescribed by Sections 29, 30, and 36 of Article III of the Constitution of Texas.

We overrule this point.

■ The legislative consent evidenced by the abovementioned resolution did not change, modify, alter or suspend a pre-existing law and therefore the trial court did not err as stated.

The State's sixteenth, and last cross-point is the error of the trial court in assuming jurisdiction of the duress suit since the legislative consent, if any, was granted by a resolution which constitutes a release of appellant corporation from liability, in violation of Section 55 of Article III of the Constitution of Texas.

We overrule this point.

■ The consent to sue resolution did not constitute a release of appellant from liability in violation of Section 55 of Article III of the Constitution and the trial court did not err in overruling this plea.

## II.

Appellant's point of error number one is that of the trial court in holding as a matter of law that Tex.Rev.Civ.Stat.Ann. art. 7064 requires, for the purpose of computing the tax liability of an insurance company such as the appellant, a comparison of the insurance company's investment in "Texas securities" with appellant's investment in "similar securities" in the State in which the company had the second highest percentage of its admitted assets invested if as in this case the company had the highest percentage of admitted assets invested in Texas.

We overrule this point.

Although the trial court found that premium notes were not "Texas securities" as that term is used in Tex.Rev.Civ.Stat. Ann. art. 7064, nevertheless, the court found that "premium notes are admitted assets" for the purposes of determining the State in which a company subject to the tax of said Article 7064 has the highest percentage of its admitted assets invested within the meaning of said article.

Further, the court found that "Texas is the State in which Plaintiff had the highest percentage of its admitted assets invested as of December 31, 1963."

It is appellant's contention that the phrase "State in which it had its highest percentage of admitted assets invested," to quote from appellant's brief, "means exactly what it says, that is, the highest State means the highest State and not the second highest State."

We cannot agree with this contention.

The second paragraph of Article 7064 provides, in part:

"Each such insurance organization shall also report to the Board of Insurance Commissioners on or before the first day of March of each year, the amount that it had invested on the 31st day of December, preceding, in Texas securities as defined herein and the amount that it had invested on said date in similar securities in the State in which it had its highest percentage of admitted assets invested, and in computing the amount of such investments in such other State, it shall include as a part thereof that percentage of its investments in bonds of the United States of America purchased between December 8, 1941, and the termination of the war in which the United States is now engaged that its reserves for unearned premiums and loss reserves, as required in such other state, are of its total reserves. If the report of such insurance organization as of December 31st preceding, shows that such organization had invested in Texas securities, as herein defined, an amount which is not less than seventy-five per cent (75%) nor more than eighty per cent (80%) of the amount that it had invested in similar securities in the state in which it then had the highest percentage of its admitted assets invested, its tax shall be 3.025% of such gross premium receipts; * * *."

Additional provisions are made for further graduated reductions in the tax rate depending upon the ratio of its investment in Texas securities to the "amount that it had invested in similar securities in the State in which it then had the highest percentage of its admitted assets invested." The lowest rate is 1.1%.

In applying this statute to a situation where Texas is the State in which the company had its highest percentage of its admitted assets invested the question naturally arises as to how to arrive at a ratio of comparison. From a reading of the statute it seems obvious that the Legislature meant to require the company claiming a lower tax rate than 3.85% to show the amount that the company had invested in Texas securities and the amount that it had invested on December 31st in similar securities in the State *other than Texas* in which it had its highest percentage of admitted

assets invested. This is made clear by the clause which states:

"And in computing the amount of such investment in such *other state* it shall include as a part thereof * * * as required in such other state * * *"

The statute deals with two States, Texas, "*and* * *\| * the State in which it had its highest percentage of admitted assets invested." Therefore, the statute is not open to the construction that it provides for a ratio between Texas and itself.

Appellant's point of error number two is the error of the court in holding that premium notes of Texas residents are not "Texas securities" within the meaning of Tex.Rev.Civ.Stat.Ann. art. 7064.

We overrule this point.

Appellant contends that if premium notes can be considered as "Texas securities" then it will be entitled to a return for the amount for which it has sued as there would be no question that the ratio of Texas securities to similar securities would exceed 90%.

These premium notes were acquired by appellant in transactions where appellant's agents sold policies of property insurance for a specified premium. They represent part of the purchase price agreed to be paid by the insured for the policy. Other than affording the insurance to the maker of the note, the appellant furnished no other consideration to acquire the notes.

That portion of Article 7064 applicable here is as follows:

"For the purposes of this Act, Texas securities are defined as real estate in this State; bonds of the State of Texas; bonds or interest bearing warrants of any county, city, town, school district or any municipality or subdivision thereof which is now or may hereafter be constituted or organized and authorized to issue bonds or warrants under the Constitution and laws of this State; notes or bonds secured by mortgage or trust deed on property in this State

insured by the Federal Housing Administrator; the cash deposits in regularly established national or state banks or trust companies in this State on the basis of average monthly balances throughout the calendar year; that percentage of such insurance company's investments in the bonds of the United States of America, that its Texas reserves for the unearned premiums and loss reserves as may be required by the Board of Insurance Commissioners, are of its total reserves; but this provision shall apply only to United States Government bonds purchased between December 8, 1941, and the termination of the war in which the United States is now engaged; in any other property in this State in which by law such insurance carriers may invest their funds."

Appellant contends that the premium notes in question qualify under the provision of the last clause of that part of Article 7064 quoted immediately above. Appellant contends that, first, these notes are property; that it is property held for the purpose of earning a return (i. e. interest); that the evidence in the case discloses that a substantial portion of the investment income of the appellant company, at least for the year 1963, was obtained from the interest from premium notes; that appellant has realized income or profit from such property. Consequently, appellant contends that such property constitutes an investment implying that it was acquired by the laying out of money, capital, or some other species of property.

█ We hold that the judgment of the trial court was correct in describing premium notes as admitted assets; however, that they are not Texas securities under the statute before us.

In the first place, premium notes are not *lawful* "investments." Article 2.10 of the Insurance Code provides, in part:

"No company * * * shall invest its funds * * * in any other manner than as follows * * *."

Unsecured premium notes are not found in Article 2.10 or anywhere in the Insurance Code as a lawful investment for the funds of an insurance company.

In the second place, assuming *arguendo* that premium notes are lawful investments, all lawful investments under Article 2.10 are not tax reducing investments under Article 7064, State Board of Insurance v. Southwest General Insurance Co., 401 S.W.2d 369 (Tex.Civ.App. Austin 1966, writ ref. n. r. e.). In *Southwest General* this Court held that the "other property" clause relied upon by appellant here, restricts securities to the same general class as those specifically mentioned in the article.

Consequently, we overrule appellant's points 3 and 4.[3]

The judgment of the trial court is affirmed.

---

3. "Point of Error No. 3: The trial court erred in failing to hold that the Insurance Department erroneously assessed appellant insurance company $71,610.71 in additional premium taxes for the year 1963.

Point of Error No. 4: The trial court erred in failing to render judgment for appellant for the sum of $71,610.71, together with interest."