

# THE ATTORNEY GENERAL
## OF TEXAS

June 22, 1987

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable David Cain
Chairman
Transportation Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No.   JM-724

Re:  Whether surplus lines carriers under article 1.14-2 of the Insurance Code are eligible to act as sureties on performance and payment bonds under article 5160, V.T.C.S.

Dear Representative Cain:

You ask whether a surplus lines insurance carrier, as defined in article 1.14-2 of the Insurance Code, can act as a surety on the performance and payment bonds required from contractors on certain public projects by article 5160, V.T.C.S.  We conclude that such bonds cannot be executed by surplus lines carriers.

Article 5160, V.T.C.S., at subdivision A, provides:

> Any person or persons, firm, or corporation, hereinafter referred to as 'prime contractor,' entering into a formal contract in excess of $25,000 with this State, any department, board or agency thereof; or any county of this State, department, board or agency thereof; or any municipality of this State, department, board or agency thereof; or any school district in this State, common or independent, or subdivision thereof; or any other governmental or quasi-governmental authority whether specifically named herein or not, authorized under any law of this State, general or local, to enter into contractual agreements for the construction, alteration or repair of any public building or the prosecution or completion of any public work, shall be required before commencing such work to execute to the aforementioned governmental authority or authorities, as the case may be, the statutory bonds as hereinafter prescribed, but no governmental authority may require a bond if the contract does not exceed the sum of $25,000. <u>Each such bond shall be executed by a corporate surety</u>

> or corporate sureties duly authorized to do
> business in this State. In the case of contracts
> of the State or a department, board, or agency
> thereof, the aforesaid bonds shall be payable to
> the State and shall be approved by the Attorney
> General as to form. In case of all other con-
> tracts subject to this Act, the bonds shall be
> payable to the governmental awarding authority
> concerned, and shall be approved by it as to form.
> *Any bond furnished by any prime contractor in an
> attempted compliance with this Act shall be
> treated and construed as in conformity with the
> requirements of this Act as to rights created,
> limitations thereon, and remedies provided.*
> (Emphasis added).

V.T.C.S. art. 5160.

This statute, where applicable, requires a contractor to furnish: (1) a performance bond in the amount of the contract and conditioned upon the faithful performance of the work in accordance with the persons, specifications, and contract documents, for the protection of the governmental client and (2) a payment bond in the amount of the contract, for the protection of those furnishing labor and materials on the project. *Id.* See generally *Greenville Independent School District v. B & J Excavating, Inc.*, 694 S.W.2d 410 (Tex. App. - Dallas 1985, writ ref'd n.r.e.); *City of Ingleside v. Stewart*, 554 S.W.2d 939 (Tex. Civ. App. - Corpus Christi 1977, writ ref'd n.r.e.).

Contractors subject to the bonding requirements in article 5160 may purchase the necessary bonds from guaranty, fidelity, or surety companies. The bonds are furnished in return for a cash payment equal to a percentage of their face value. At present, the Insurance Board indicates that performance and payment bonds typically are available for a cash payment equal to five to ten percent of fair value of the bond. We can find no authority for the proposition that a corporate surety is required by the Insurance Code to furnish a payment or performance bond; thus, if the surety believes the risk of default is too great, it may refuse to issue a bond.

The bonds specified in article 5160 must be executed by a corporate surety or sureties "duly authorized to do business in [the] state." V.T.C.S. art. 5160. The making of a contract of guaranty or suretyship -- the essence of executing a performance or payment bond -- is an "act of insurance." Ins. Code art. 1.14-1, §2(a)(2). "Acts of insurance" can only be done by entities authorized by the Insurance Board pursuant to the provisions of the Insurance Code. Ins. Code art. 1.14-1, §3. (Article 2.01 of the Business Corporation Act provides that no corporation may be organized or obtain any authority

to transact business in Texas under the terms of the Business Corporation Act if any of its purposes is to operate any insurance company of any type or character. Bus. Corp. Act art. 2.01(B)(4)(d)). Thus, to obtain authorization to do business as a corporate surety, a certificate of authority must be obtained from the Insurance Board. Ins. Code art. 1.14, §1. An authorized corporate surety is regulated as a property and casualty insurance company in accordance with the provisions of subchapter B of the Insurance Code. Ins. Code art. 5.13. The bond of a surety company duly qualified to do business in the state is conclusive proof that a contractor has met the requirements of article 5160. Ins. Code art. 7.19-1.

A surplus lines carrier is denominated specifically in the Insurance Code as an unauthorized insurer -- one operating without the required certificate of authority. Ins. Code art. 1.14-2, §4(b). Surplus lines carriers furnish "types" ("lines") of insurance coverage which cannot be obtained with diligent effort from authorized insurers. Ins. Code art. 1.14-2, §§3, 5. See also 28 T.A.C. §§15.7, 15.8 (1981) (the regulations implementing the surplus lines carrier provisions of the Insurance Code). Only insurance agents specifically licensed by the Insurance Board to issue surplus lines policies may provide such insurance. Ins. Code art. 1.14-2, §4(a). We note that the Insurance Code relieves the Insurance Board of any responsibility to determine the financial condition or claims practice of any unauthorized surplus lines insurer whose policies are sold by a licensed agent. Ins. Code art. 1.14-2, §8(f). The duty of the Insurance Board to evaluate the financial conditions of an authorized insurer is one of the principal means used by the state to protect those who rely on insurance coverage. See, e.g., Ins. Code arts. 1.10 (general duties of the Insurance Board); 1.15 (duty of Insurance Board to periodically examine the condition of carriers); and 1.32 (duty to take steps to correct hazardous financial and business conditions of insurers).

Accordingly, we find that the kinds of corporate sureties "authorized to do business in the state" so as to be able to execute suitable payment bonds acceptable under article 5160, V.T.C.S., are only those companies authorized to furnish insurance in accordance with the provisions of the Insurance Code. An authorized corporate surety must possess a certificate of authority issued by the Insurance Board. The Insurance Code is the only source for a comprehensive statutory definitive meaning of an "authorized corporate surety" and its provisions control the meaning of that term in article 5160. See City of Baytown v. Angel, 469 S.W.2d 923 (Tex. Civ. App. - Houston [14th Dist.] 1971, writ ref'd n.r.e.); Commercial Standard Fire and Marine Co. v. Commissioner of Insurance, 429 S.W.2d 930 (Tex. Civ. App. - Austin 1968, no writ); 53 Tex. Jur. 2d Statutes §161.

## S U M M A R Y

Article 5160, V.T.C.S., requires contractors on certain public projects in certain circumstances to execute performance and payment bonds furnished by corporate sureties authorized to do business in the state. Surplus lines insurance carriers (including sureties), as defined in article 1.14-2 of the Insurance Code, are not authorized to engage in the act of furnishing insurance, such as surety bonds, in the state, and may not furnish the bonds required by article 5160, V.T.C.S.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Don Bustion
Assistant Attorney General