TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-03-00632-CV






Service Life and Casualty Insurance Company, Appellant


v.


Jose Montemayor, Commissioner of Insurance and the

Texas Department of Insurance, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT

NO. GN300220, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING






O P I N I O N



 This appeal presents a familiar issue: whether an insurance company may charge a
policy fee in addition to the premium rate set by the Commissioner of Insurance (the
"Commissioner"). Appellant Service Life and Casualty Insurance Company ("Service Life") sought
approval from the Texas Department of Insurance (the "Department") to charge a $50 policy fee in
addition to its premium rate. After the Commissioner disapproved the policy fee, Service Life
sought review of the Commissioner's decision through an administrative hearing. The
administrative law judge opined that Service Life failed to establish legal authority to charge the
policy fee, and the Commissioner signed an order agreeing with the administrative law judge. 
Service Life then sought review of that order in district court; the court denied Service Life's request
for relief. It is from this judgment that Service Life appeals. We affirm the district court's judgment.

DISCUSSION

 Service Life's single issue on appeal is whether the district court failed to correctly
interpret and apply the insurance code with regard to Service Life's proposed policy fees. Statutory
construction presents a question of law, which we review de novo. Texas Dep't of Transp. v.
Needham, 82 S.W.3d 314, 318 (Tex. 2002). Our objective when we construe a statute is to
determine and give effect to the legislature's intent. See Liberty Mut. Ins. Co. v. Garrison
Contractors, Inc., 966 S.W.2d 482, 484 (Tex. 1998); Union Bankers Ins. Co. v. Shelton, 889 S.W.2d
278, 280 (Tex. 1994). Any resolution of an issue of statutory construction must begin with an
analysis of the statute. See Renaissance Park v. Davila, 27 S.W.3d 252, 256 (Tex. App.--Austin
2000, no pet.); Ford Motor Co v. Motor Vehicle Bd., 21 S.W.3d 744, 762 (Tex. App.--Austin 2000,
pet. denied). We must look at the insurance code as a whole instead of analyzing individual
provisions in isolation from each other. See Continental Cas. Co. v. Downs, 81 S.W.3d 803, 805
(Tex. 2002). We are to consider, among other factors, the language of the statute, legislative history,
the nature and object to be obtained, and the consequences that would follow from alternate
constructions, even when a statute is not ambiguous on its face. See Helena Chem. Co. v. Wilkins,
47 S.W.3d 486, 493 (Tex. 2001). In case of conflict between a general statutory provision and a
special provision addressing the same subject, the special provision controls the general. Brazoria
County v. Texas Comm'n on Evntl. Quality, 128 S.W.3d 728, 738 (Tex. App.--Austin 2004, no
pet.); Commercial Standard Fire & Marine Co. v. Commissioner of Ins., 429 S.W.2d 930, 933 (Tex.
Civ. App.--Austin 1968, no writ). 

 The Act for the Regulation of Credit Life Insurance and Credit Accident and Health
Insurance (the "Act") applies to charges relating to credit life and credit accident and health
insurance. Tex. Ins. Code Ann. § 1153.004(a) (West 2004). Its purpose is "to promote the public
welfare by regulating credit life insurance and credit accident and health insurance." Id.
§ 1153.002(a) (West 2004). To effectuate this purpose, the Act should be construed liberally. Id.
§ 1153.002(c).

 According to the Act, the Commissioner may adopt a presumptive premium rate for
various classes of business and terms of coverage after notice and a full hearing. Id. § 1153.103(a)
(West 2004). The Commissioner must consider any relevant data in setting the presumptive
premium rate, including "reasonable acquisition costs, loss ratios, administrative expenses, reserves,
loss settlement expenses, the type or class of business, the duration of various credit transactions,
and reasonable and adequate profits to the insurers." Id. § 1153.103(d). Credit insurers may charge
premiums up to thirty percent above or below the presumptive premium rate. Id. § 1153.105 (West
2004). Also, credit insurers may appeal the presumptive premium rate by filing suit in a Travis
County district court. Id. § 1153.104 (West 2004). Finally, an insurer may file with the
Commissioner a rate that is thirty percent higher or lower than the presumptive premium rate, which
may be approved if actuarially justified. Id. § 1153.106 (West 2004).

 Service Life is currently charging the maximum thirty percent over the presumptive
premium rate. It argues, however, that in addition to this premium rate, it should be allowed to
charge a policy fee, citing article 21.35B of the insurance code. The article provides in pertinent
part:

Art. 21.35B. Permissible Payments


(a) No payment may be solicited or collected by an insurer, its agent, or sponsoring
organization in connection with an application for insurance or the issuance of
a policy other than:


 (1) premiums;

 (2) taxes;

 (3) finance charges;

 (4) policy fees;

 (5) agent fees;

 (6) service fees, including charges for costs described under Article
21.35A of this code;

 (7) inspection fees; or

 (8) membership dues in a sponsoring organization.



Tex. Ins. Code Ann. art. 21.35B (West Supp. 2004) (emphasis added). Service Life argues that by
listing premiums and policy fees as separate items that the insurance company is permitted to charge,
article 21.35B makes a clear distinction between premiums and policy fees. The Act, however,
authorizes the Commissioner to establish only a premium, not a policy fee. Thus, the Act should not
be construed to deny an insurer the ability to charge policy fees in addition to premiums. In other
words, Service Life argues that although the purpose of the Act is intended to regulate credit life
insurance and credit accident and health insurance, it may only regulate premiums, not policy fees. (1)

 Today, in Liberty Mutual Insurance Co. v. Griesing, No. 03-03-00646-CV, slip op.
(Tex. App.--Austin Aug. 26, 2004, no pet. h.), we considered a similar issue, construing article
21.35B of the insurance code. In that case, Griesing challenged her auto insurer's imposition of a
state-mandated fee in addition to her auto insurance rate. As with the life insurance industry, the
Commissioner annually sets a benchmark rate for each line of automobile insurers; auto insurers may
charge rates up to thirty percent above or below the benchmark rate set by the Commissioner. In
determining this rate, the Commissioner may consider a number of factors. In defense of its attempt
to impose a fee in addition to the rate set by the Commissioner, Liberty Mutual, Griesing's auto
insurer, presented an argument in that case similar to the one presented by Service Life here: 
Because article 21.35B listed both premiums and taxes as permissible items that an insurance
company may charge, Liberty Mutual should be allowed to charge its customers both the insurance
rate set by the Commissioner as well as a tax (the state-mandated fee). We concluded, however, that
the rate is "the charge" for a line of insurance. Article 21.35B acts only "as a limit on the ability of
the commissioner to consider or of an insurer to include the costs of business in establishing a rate,"
and that an insurer "may only include those [21.35B] costs when filing rates with the commissioner." 
Id. at 10.

 Similarly, we conclude that article 21.35B is not intended to allow insurers to raise
revenues by circumventing rate-regulation requirements. Rather, article 21.35B speaks only
generally to the types of payments that insurers are permitted to solicit or collect and forbids all types
of payments other than those listed in the statute. It does not, however, entitle insurers to charge
policyholders for every item listed in the statute. Indeed, the statute is included under the subchapter,
"Miscellaneous Provisions," suggesting that it is a general provision and not part of a specific
regulatory scheme.

 The Act, in contrast, specifically sets out the manner in which insurers may collect
payment. And under the more specific Act, credit life insurance and credit accident and health
insurance are strictly regulated. In keeping with the Act's regulatory purpose, the Commissioner is
authorized to determine a presumptive premium rate, which is "the charge" for credit life insurance
and credit accident and health insurance. In determining this rate, the Commissioner must consider
any relevant data. See id. at 9. And among the data that may be considered are the items listed in
article 21.35B that a credit life insurance company or a credit accident and health insurance company
may charge; these items, if allowed, would be included in the presumptive premium rate, not as
separate fees, because the presumptive premium rate is the method by which the Act authorizes these
insurance companies to collect their payments. 

 We note that among the items listed as permissible charges, article 21.35B includes
"agent fees." Tex. Ins. Code Ann. art. 21.35B(a)(5). Section 1153.103(e) of the Act, however, also
authorizes the Commissioner to consider agent fees in determining the presumptive premium rate. 
Tex. Ins. Code Ann. § 1153.103(e) ("In determining the presumptive premium rate, the
commissioner . . . may request from an insurer or agent any relevant data relating to the presumptive
premium rate, including information relating to compensation paid for the sale of credit insurance,
expenses, losses, and profits."). Assuming the Commissioner did consider agent fees in determining
the presumptive premium rate, Service Life's reading of article 21.35B would allow insurers to
collect agent fees twice--once as part of the presumptive premium rate and again as an additional
fee authorized by article 21.35B. Such an interpretation conflicts with the Act's stated intent of
promoting public welfare by regulating credit life insurance and credit accident and health insurance.

 Finally, even if article 21.35B and the Act could not be construed so as to avoid
conflict, because the Act is more specific than the general article 21.35B, the provisions in the Act
must prevail as an exception to the general provision. See Brazoria County, 128 S.W.3d at 738. We
therefore overrule Service Life's single issue on appeal.


CONCLUSION

 We hold that the Act for the Regulation of Credit Life Insurance and Credit Accident
and Health Insurance authorizes the Commissioner to set the presumptive premium rate for credit
life insurers and credit accident and health insurers. Insurers may charge up to thirty percent above
this rate, but may not charge additional fees in order to exceed the thirty percent ceiling. Article
21.35B does not allow the insurers to circumvent the presumptive premium rate by charging
additional fees listed in that statute. We therefore affirm the district court's judgment, denying
Service Life's request to reverse the Commissioner's order.



 __________________________________________

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: August 26, 2004
1. Service Life also directs us to the finance code in support of its argument. Section 348.202
of the code permits the sale of credit life insurance and credit health and accident insurance in
connection with a loan and provides that the cost of the insurance as well as a policy or agent fee
charged in connection with the insurance may be included in the loan contract. Tex. Fin. Code Ann.
§ 348.202(c) (West Supp. 2004). Service Life contends that this statute evidences the legislature's
intent to permit credit life and credit health and accident insurance companies to charge both a
premium rate and an additional policy fee. Section 342.407 of the code, however, sets out the
requirements for including an insurance charge in a loan contract, including that the insurance must
be written "in accordance with the Insurance Code." Id. § 342.407 (West Supp. 2004). Thus, the
finance code specifically defers to the insurance code for authorization of insurance charges. We
therefore disagree with Service Life's contention that section 348.202 of the finance code is
dispositive of the issue presented here.