Henry COULTER et al., Appellants,

v.

Archie MELADY et al., Appellees.

No. 8115.

Court of Civil Appeals of Texas,
Texarkana.

Nov. 14, 1972.

Rehearing Denied Dec. 12, 1972.

Paul W. Anderson, Sam B. Hall, Jr., Hall & Huffman, Marshall, L. F. Burke, Longview, for appellants.

Ben Z. Grant, Kirkpatrick, Grant, Dennis & Baxter, Marshall, for appellees.

CHADICK, Chief Justice.

Archie Gordon Melady and Mrs. Leola Anderson were ostensibly united in marriage on July 16, 1970, in a marriage ceremony solemnized before a Justice of the Peace of Harrison County, Texas. As the parties entered the ceremony, both were single, one male and the other female, and both had complied with all legal prerequisites to a valid marriage so far as premarital tests, obtaining a marriage license, and presenting themselves at the ceremony are concerned. At conclusion of the ceremony the officiating officer pronounced the parties husband and wife and promptly made a return showing performance of the marriage rites and the return was duly recorded as a public document by the County Clerk. Of moment in this appeal is controverted testimony that Mrs. Anderson was mute during the ceremony and gave no audible response to questions directed to her by the officiating Justice of the Peace, from which it might be inferred that she did not consent to marriage.

Mrs. Leola Melady died testate on October 11, 1970. Five days later, October 16, 1970, suit was filed by one of Mrs. Melady's brothers and a nephew in a District Court of Harrison County, to annul Mrs. Melady's marriage to Archie Melady and for ancillary relief. An amended petition was subsequently filed in which three of Mrs. Melady's brothers, a sister, and the nephew are named as plaintiffs, and Archie Melady, Ed Melady, and the Marshall National Bank were named as defendants; the relief sought was the same as prayed originally. When the parties concluded presentation of evidence and rested, the trial judge instructed a jury verdict in favor of the defendants and entered judgment that plaintiffs take nothing, decreeing therein that: " * * * the marriage between Archie Melady and Leola Anderson Melady is hereby declared to be a valid marriage, * * *," and taxed costs against the plaintiffs.

The decisive points of error in the appeal are:

"Point No. 7. The trial court erred in holding as a matter of law that the defendants were entitled to an instructed verdict and judgment.

"Point No. 8. The trial court erred in rendering judgment for the defendants based upon the unconstitutional Section 2.47 of the Family Code."

Basically, the appellants (plaintiffs in the trial court), contend (1) that the controverted testimony mentioned in the first paragraph raised a fact issue for jury determination respecting Mrs. Melady's consent to marriage, and (2) that the Texas Family Code Ann. Sec. 2.47, V.T.C.A., (1970) is unconstitutional insofar as it denied the appellants a right to have the Anderson-Melady relationship declared a void marriage because Mrs. Anderson did not consent to marriage with Archie Melady. Determination of the quoted points of error disposes of this appeal and renders discussion of the preceding six points unnecessary.

The Texas Family Code Annotated became effective January 1, 1970; (Sections alluded to in this opinion are reproduced in the appendix). The enactment statutorily regularizes the marriage relationship in Texas. Public policy that favors the relationship and preserves and upholds the validity of marriage is articulated therein. Prohibitions, misconduct and circumstances that make marriages either void or voidable are catalogued. The parties authorized to bring proceeding to annul voidable marriages are specified. Void marriages are those prohibited by Texas Family Code Ann. Secs. 2.21 and 2.22 (1970). Voidable marriages are those that may be annulled under the provisions of Texas Family Code Ann. Secs. 2.41, 2.42, 2.43, 2.44, 2.45 and 2.-46.

▇▇▇▇ Want of consent to marriage, standing alone, is not listed in the Family Code as a cause that renders a marriage either void or voidable. Nevertheless this court is persuaded that free consent and agreement of the parties is essential to a valid ceremonial marriage. 52 Am.Jur.2d Marriage, Sec. 27; 55 C.J.S. Marriage § 18; 38 Tex.Jur.2d Marriage, Sec. 8. In this instance, however, consent is shown as a matter of law. The structure of the Family Code, the detailed and specific rules prescribed therein to be followed in establishing the marriage relationship, compels a party to knowingly initiate and perform the legal prerequisites to a ceremonial marriage. Such parties are required by the Code to undergo medical examination, unless exempt by court order, to apply for a marriage license, and to participate in a marriage ceremony conducted by an authorized person. A party's knowing compliance with the Code's requirements, as Mrs. Anderson complied in this instance, evidences voluntary consent to marriage and by force of law is conclusive that such party voluntarily consented. And such marriage may be annulled only when it is judicially ascertained to be void or voidable for a reason listed in the statutes. Tex.Family Code Ann. Sec. 2.01 (1970). The Code prescribes no set form for a marriage ceremony or the procedure therein. The official conducting the ceremony is not required to elicit particular or specific information or answers from a party to the marriage, nor are participants required to speak or respond in a given way. Mrs. Anderson's failure to audibly respond to questions during the ceremony does not raise a fact issue as to her consent to the marriage, as her prior action shows consent as a matter of law. The appellants' seventh point of error is overruled.

▇▇▇ The trial petition averred that Mrs. Melady was possessed of a substantial separate estate at the time of her death (the evidence showing the net value at approximately $200,000.00); that Mrs. Melady did not make a valid will; and that by virtue of kinship the plaintiffs had an interest in such estate under the law of descent and

distribution. In addition to want of consent, which has been found to be without merit, the trial pleadings alleged as grounds for annulment Mrs. Melady's mental incompetency and that Archie Melady's threats, force and fraud induced Mrs. Melady to enter into the marriage relationship. Reference to excerpts from the Code copied in the margin shows that the Family Code authorizes annulment upon grounds substantially similar to those alleged. However, Code Section 2.47 bars prosecution of a suit for annulment upon the grounds alleged in the appellants' pleading if instituted after the death of a party to the marriage relationship. In the forepart of the opinion it was stated that this suit was not instituted until five days after the death of Mrs. Melady, and therefore, such annulment action was foreclosed by the mentioned section at the time instituted.

■ The appellants seek to sidestep Code Section 2.47 on the ground that it is repugnant to the Texas Constitution, art. I, Sec. 15 and Sec. 19, Vernon's Ann.St. The pertinent provisions of the sections referred to are copied in the margin. Vested rights, including matured causes of action or defense are protected by Tex.Const. art. I, Sec. 19. Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556 (Tex.Sup.1916); International & G. N. R. Co. v. Edmundson, 222 S.W. 181 (Tex. Comm'n.App.1920); and 12 Tex.Jur.2d Constitutional Laws, Secs. 115, 116 and 117. If an interest in Mrs. Melady's estate vested in the appellants before the effective date of Code Section 2.47, the section would be void as to the appellants. But under this record, there is nothing to inhibit application of Code Section 2.47 as valid and applicable.

■ Section 2.47 became effective January 1, 1970. Mrs. Melady died slightly more than ten months later on October 11, 1970. The appellants base their claim and interest in Mrs. Melady's estate on the law of descent and distribution. Any claim under the law of descent and distribution arose as a result and at the time of her death. At the effective date of the Code Section, the appellants had nothing more than an expectancy under the law of descent and distribution, that is, a prospect that Mrs. Melady's estate might pass to and vest in them at the time of her death, if not otherwise disposed of by her. A mere expectancy is not protected by the mentioned provisions of the Constitution. Dallas v. Trammell, 129 Tex. 150, 101 S. W.2d 1009 (Comm'n App.1937, opin. adpt.).

■ In view of the foregoing discussion, it is apparent that no jury issue was developed in the case, and that Texas Constitution, art. I, Sec. 15 was not violated in basing judgment in this case upon Code Section 2.47.

The appellants' eighth and all other points of error not previously acted upon are overruled and the judgment of the trial court is affirmed.

RAY, J., not participating.

APPENDIX

"Sec. 2.21. *Consanguinity.* (a) A person may not marry: (1) an ancestor or descendent, by blood or adoption; (2) a brother or sister, of the whole or half blood or by adoption; or (3) a parent's brother or sister, of the whole or half blood. (b) A marriage entered into in violation of this section is void.

"Sec. 2.22. *Marriage During Existence of Prior Marriage.* A marriage is void if either party was previously married and the prior marriage is not dissolved. However, the marriage becomes valid when the prior marriage is dissolved if since that time the parties have lived together as husband and wife and represented themselves to others as being married.

"Sec. 2.41. *Underage.* (a) The . . . marriage of a male 16 years of age or older but under 19 years of age, or a female 14 years of age or older but under 18 years of age, without parental consent as provided by Section 1.52 of this code, is voidable and subject to annulment at the discretion of the court on the petition of a next friend for the benefit of the underage party, or on the petition of the parent or the guardian of the person of the underage party. However, a suit may not be brought under this subsection more than 90 days after the date of the marriage.

(b) In exercising its discretion under this section, the court shall consider all pertinent facts concerning the welfare and best interests of both parties to the marriage, including whether or not the woman is pregnant.

"Sec. 2.42. *Under Influence of Alcohol or Narcotics.* On the suit of a party to a marriage, the marriage is voidable and subject to annulment if: (1) at the time of the marriage the petitioner was under the influence of alcoholic beverages or narcotics and as a result did not have the capacity to consent to the marriage; and (2) the petitioner has not voluntarily cohabited with the other party to the marriage since the effects of the alcoholic beverages or narcotics ended."

"Sec. 2.43. *Impotency.* On the suit of a party to a marriage, the marriage is voidable and subject to annulment if: (1) either party, for physical or mental reasons, was permanently impotent at the time of the marriage; (2) the petitioner did not know of the impotency at the time of the marriage; and (3) the petitioner has not voluntarily cohabited with the other party since learning of the impotency.

"Sec. 2.44. *Fraud, Duress, Force.* On the suit of a party to a marriage, the marriage is voidable and subject to annulment if: (1) the other party uses fraud, duress, or force to induce the petitioner to enter into the marriage; and (2) the petitioner has not voluntarily cohabited with the other party since learning of the fraud or since being released from the duress or force.

"Sec. 2.45. *Mental Incompetency.* (a) On the suit of a party to a marriage, or on the suit of the party's guardian or next friend (if the court finds it to be in his best interest to be represented by a guardian or next friend), the marriage is voidable and subject to annulment if: (1) at the time of the marriage, as a result of a mental disease or defect, the petitioner did not have the mental competency to consent to marriage or to understand the nature of the marriage ceremony; and (2) since the marriage ceremony, the petitioner has not voluntarily cohabited with the other party during any period when the petitioner possessed the mental competency to recognize the marriage relationship.

(b) On the suit of a party to a marriage, the marriage is voidable and subject to annulment if: (1) at the time of the marriage, as a result of a mental disease or defect, the other party did not have the mental competency to consent to marriage or to understand the nature of the marriage ceremony; (2) at the time of the marriage, the petitioner neither knew nor reasonably should have known of the mental disease or defect; and (3) since the petitioner discovered or reasonably should have discovered the mental disease or defect, the petitioner has not voluntarily cohabited with the other party.

"Sec. 2.46. *Concealed Divorce.* (a) On the suit of a party to a marriage, the marriage is voidable and subject to annulment if: (1) the other party was divorced from a third party within the six-month period preceding the day of the marriage ceremony, and the prohibition against marrying again within the six-month period was not waived under Section 3.66 of this code; (2) at the time of the marriage ceremony, the petitioner did not know, and a reasona-

bly prudent person would not have known, of the divorce; and (3) since the petitioner discovered, or a reasonably prudent person would have discovered, the fact of the divorce, the petitioner has not voluntarily cohabited with the other party.

(b) A suit may not be brought under this section more than one year after the date of the marriage.

"Sec. 2.47. *Death of Party to Voidable Marriage.* A marriage voidable under this subchapter is not subject to challenge in any proceeding instituted after the death of either party.

"Sec. 2.01. *State Policy.* In order to promote the public health and welfare and to provide the necessary records, this code prescribes detailed and specific rules to be followed in establishing the marriage relationship. However, in order to provide stability for those entering into the marriage relationship in good faith and to provide legitimacy and security for the children of the relationship, it is the policy of this state to preserve and uphold each marriage against claims of invalidity unless strong reasons exist for holding it void or voidable. Therefore, every marriage entered into in this state is considered valid unless it is expressly made void by this chapter or unless it is expressly made voidable by this chapter and is annulled as provided by this chapter. When two or more marriages of a person to different spouses are alleged, the most recent marriage is presumed to be valid as against each marriage that precedes it until one who asserts the validity of a prior marriage proves its validity.

"Tex.Const. art. I, Sec. 15. The right of trial by jury shall remain inviolate. * * *"

"Sec. 19. No citizen of this State shall be deprived of life, liberty, property, or immunities, or in any manner disfranchised, except by the due course of the law of the land."