## KEARNEY & TRECKER CORPORATION

v.

## The UNITED STATES.

### No. 477–81C.

United States Court of Claims.

Sept. 8, 1982.

Malcolm D. Young, Omaha, Neb., attorney of record, for plaintiff; Young & White, Omaha, Neb., of counsel.

Colvin W. Grannum, Washington, D. C., with whom was Asst. Atty. Gen. J. Paul McGrath, for defendant; Cecil Hunt, Pamela P. Breed, and Daniel C. Hurley, Jr., Dept. of Commerce, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and DAVIS and BENNETT, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge:

In this case of first impression, the plaintiff seeks just compensation under the fifth amendment for the alleged taking of its property that occurred when, as a result of the government's requiring the plaintiff to expedite delivery of a machine it was manufacturing for a government contractor, the plaintiff lost a sale of a similar machine under a contract with a private contractor. The plaintiff seeks the damages it suffered on the aborted second sale, apparently consisting of its expenses and lost profits. The government has moved for summary judgment, which we grant on the ground that the plaintiff has not stated a valid claim for a compensable fifth amendment taking.

### I.

In late 1979, the plaintiff entered into contracts with Rolls Royce, Ltd., and Lockheed-California ("Lockheed") to manufacture for, and to sell to, each of them a complicated machining device called a "Moduline." The delivery date for the Rolls Royce Moduline was January 1981, and the purchase price was $682,480. The delivery date for the Lockheed Moduline

was December 15, 1981, and the contract price was cost plus a fixed fee. Lockheed ordered its Moduline for use in a classified Air Force project.

In the second half of 1980, the Air Force decided that its requirements necessitated that Lockheed's production schedule be accelerated. This in turn required that Lockheed obtain its Moduline in June 1981. Acceleration of the Moduline delivery date was to be accomplished through the Defense Production Act of 1950, as amended, Pub.L.No.81–774, 64 Stat. 798, codified at 50 U.S.C.App. §§ 2061 *et seq.* (1976 & Supp. IV 1980) (the "Act").

The Act authorizes the President "to require that performance under contracts or orders ... which he deems necessary ... to promote the national defense shall take priority over performance under any other contract or order." 50 U.S.C.App. § 2071(a). The President has delegated this authority to the Secretary of Commerce, who in turn has delegated it to the Office of Industrial Management (the "Office"). The means by which the Office exercises this authority is the rating of contracts or orders. There are three categories of ratings, each of which gives the contract or order priority over unrated contracts or orders. One of the three ratings, called a directive, takes priority over the other two ratings and was issued in this case. The plaintiff does not contend that it was unaware when it accepted the Lockheed order in 1979 that the government could expedite delivery under the Act.

When the plaintiff was informed that the Air Force was considering the rating of the Lockheed Moduline to expedite its delivery, the plaintiff told the government that that action would delay the delivery of several Modulines to commercial customers with unrated purchase orders.

Because Modulines were "made to order," generally took two years to produce, and came off the assembly line at a rate of only two per month, the plaintiff could not expedite production of the Moduline originally designated for Lockheed to meet the June delivery date. Instead, the plaintiff would have to supply Lockheed with a different Moduline that was being manufactured for some customer with a lower priority but an earlier delivery date and that could be modified by June 1981 to meet Lockheed's specifications. Consequently, the delivery date for the commercial customer whose Moduline was delivered to Lockheed would be delayed—perhaps until the Moduline originally scheduled for Lockheed could be completed.

Two factors would increase further the delay for the commercial customer preempted by the rating of the Lockheed contract. First, a three-months' strike in the second half of 1980 shut down the plaintiff's assembly line and so delayed its overall delivery schedule. Second, the plaintiff had several governmentally rated orders for Modulines other than the Lockheed order. These orders would have to be given priority in any rearrangement of the plaintiff's delivery schedule (that is, efforts first would have to be made to minimize the delay on these rated orders before the needs of the commercial customers could be met).

After considering the plaintiff's concerns, the Office on November 6, 1980, telexed a directive to the plaintiff ordering that the Moduline be delivered to Lockheed by June 30, 1981.

On November 12, 1980, the plaintiff accepted the directive. The plaintiff, however, informed the Office that the new Lockheed delivery date would result "in a five month delay beyond our three month strike delay for one of our commercial customers." Rolls Royce was the unlucky commercial customer. Because of the delay, Rolls Royce notified the plaintiff in late January 1981 that it was cancelling its order.

The plaintiff informed the Office in February 1981 of the Rolls Royce cancellation and stated that it would look "to the government ... for the reimbursement for all financial loss and damages occasioned by the preemption of our products by the utilization of these priorities." Subsequently, the plaintiff calculated the total loss at $434,596, the amount for which it now sues.

The plaintiff's petition contends that the issuance of the directive constituted a taking of the plaintiff's property, for which the fifth amendment of the Constitution requires the government to pay just compensation. The plaintiff argues the government "took both [the plaintiff's] contract with Rolls Royce and the Modu-Line" delivered to Lockheed.

## II.

A. The government argues that its directive that the plaintiff expedite the delivery of the Moduline to Lockheed did not constitute a taking. Assuming without deciding, however, that it was a taking, the plaintiff still cannot recover.

The only property of the plaintiff that the directive "took" was the Moduline intended for Rolls Royce but diverted to Lockheed. The plaintiff received for that Moduline the same compensation for which it had agreed to deliver a Moduline to Lockheed, i.e., cost plus a fixed fee. We cannot say that this amount did not constitute just compensation for the Moduline.

Just compensation for property the government has taken ordinarily is determined by the fair market value of the property. *Kimball Laundry Co. v. United States*, 338 U.S. 1, 5–6, 69 S.Ct. 1434, 1437–38, 93 L.Ed. 1765 (1949); *United States ex rel. TVA v. Powelson*, 319 U.S. 266, 275, 63 S.Ct. 1047, 1052, 87 L.Ed. 1390 (1943); *United States v. Miller*, 317 U.S. 369, 374–75, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943). *See generally* 4 NICHOLS' THE LAW OF EMINENT DOMAIN § 12.2 (3d ed. J. Sachman 1981) [hereinafter cited as NICHOLS' EMINENT DOMAIN]. Fair market value provides an objective standard that properly ignores the owner's or condemnor's "unique need for [the] property or idiosyncratic attachment to it." *Kimball Laundry Co.*, 338 U.S. at 5, 69 S.Ct. at 1437.

In the present case, there is no established market price for Modulines. However, Lockheed and the plaintiff negotiated a price (i.e., cost plus a fixed fee) for the Moduline before the plaintiff began to manufacture it or the taking occurred. *Cf.* 4 NICHOLS' EMINENT DOMAIN *supra*, § 12.311 (discussing the relevance for valuation of prior sales of the property or contemporary sales of similar property). The plaintiff does not assert that the price resulted from coercion or was below the market. It does not contend that the Moduline it delivered to Lockheed differed significantly from the one originally ordered by and intended for Lockheed, or that any changes it made in the Moduline being built for Rolls Royce to meet Lockheed's requirements so increased its costs as to make the Lockheed price unfair. In the circumstances, the negotiated price constituted just compensation for the Moduline itself.

The plaintiff, however, argues: "What was appropriated was not just the Modu-Line, but [the plaintiff's] investment backed expectations to produce and deliver a Modu-Line to Rolls Royce at a date certain. [The plaintiff] has not been compensated for this appropriation ...." To the extent this contention refers to the plaintiff's inability to perform its contract with Rolls Royce, we deal with that issue below. If, however, the plaintiff is arguing that because of the "idiosyncratic" needs of Rolls Royce, the English manufacturer would have paid more than the market price (i.e., the price Lockheed negotiated) for the particular Moduline delivered to Lockheed, that is not a factor which may be considered in determining just compensation. *See, e.g., Kimball Laundry Co.*, 338 U.S. at 5, 69 S.Ct. at 1437. The frustration of the plaintiff's "expectations" is not compensable. *E.g., Powelson*, 319 U.S. at 281–82, 63 S.Ct. at 1055–56; *see also R. J. Widen Co. v. United States*, 174 Ct.Cl. 1020, 1029, 357 F.2d 988, 994 (1966); 4 NICHOLS' EMINENT DOMAIN, *supra*, § 12.22[2] at p. 12–111 (it is the objective value of the property taken, not the loss to the property's owner, that is the measure of compensation).

B. The plaintiff also argues that the directive appropriated its contract with Rolls Royce. The government, however, did not take the contract. Although the directive may have frustrated the plaintiff's performance of the contract, that frustra-

tion was an "unintended incident" of the taking of the Moduline, for which the plaintiff is not entitled to receive just compensation under the fifth amendment.

A contract is property within the meaning of the fifth amendment, *e.g., Lynch v. United States*, 292 U.S. 571, 579, 54 S.Ct. 840, 843, 78 L.Ed. 1434 (1934), and the government may appropriate a contract with the resulting obligation to pay just compensation, *e.g., Brooks-Scanlon Corp. v. United States*, 265 U.S. 106, 44 S.Ct. 471, 68 L.Ed. 934 (1924). On the other hand, not every exercise of governmental power that interferes with, or frustrates, performance of a contract constitutes a compensable taking. *E.g., Omnia Corp. v. United States*, 261 U.S. 502, 510–11, 43 S.Ct. 437, 438, 67 L.Ed. 773 (1923); *Knox v. Lee*, 79 U.S. (12 Wall.) 457, 20 L.Ed. 287 (1870); *Klein v. United States*, 179 Ct.Cl. 910, 914–16, 375 F.2d 825, 828–29 (1967), *cert. denied*, 389 U.S. 1037, 88 S.Ct. 770, 19 L.Ed.2d 824 (1968); 4 NICHOLS' EMINENT DOMAIN, *supra*, § 13.33.

In *Omnia*, the plaintiff had entered into a contract with a steel manufacturer to purchase a large quantity of steel at below market price. Prior to any delivery of steel to Omnia, the government requisitioned the manufacturer's entire production for the year. Omnia sued the government for just compensation, claiming that the government requisition effected a taking of its property, i.e., the contract.

The Court held that the requisition did not effect a compensable taking of Omnia's contract. The Court noted that the taking clause of the fifth amendment covers only direct appropriations of private property and not "consequential loss or injury resulting from lawful governmental action." 261 U.S. at 510, 43 S.Ct. at 438. The Court rejected Omnia's argument that the steel plate was so identified with the contract "that the taking of the former, *ipso facto*, took the latter." *Id.* The Court stated: "As a result of this lawful government action [the requisitioning of the steel] the performance of the contract was rendered impossible. It was not appropriated but

ended." *Id.* at 511, 43 S.Ct. at 438. "[T]he effect of the requisition was to bring the contract to an end, not to keep it alive for the use of the Government.... Frustration and appropriation are essentially different things." 261 U.S. at 513, 43 S.Ct. at 439.

The principles announced and applied in *Omnia* are equally applicable here, and similarly compel the conclusion that the directive did not effect a taking of the plaintiff's contract with Rolls Royce. The government did not appropriate the contract. The directive that required the plaintiff to expedite delivery of the Moduline to Lockheed merely frustrated the performance of the plaintiff's contract with Rolls Royce. The government did not appropriate any of the rights the plaintiff had under the contract but only made it impossible for the plaintiff to perform it. As in *Omnia*, "the effect of the requisition was to bring the contract to an end, not to keep it alive for the use of the Government." *See also T. O. F. C. v. United States*, Ct.Cl., 683 F.2d 389, 395 (1982).

The fact that in *Omnia* it was the purchaser rather than the manufacturer who sued for a taking, does not provide a basis for distinguishing that case, as the plaintiff seeks to do. The Court focused not upon the effect of the government's action upon the purchaser, but upon the effect of that action upon the manufacturer's ability to perform its contract with the purchaser. *Omnia* makes it clear that the mere frustration of a contract resulting from the government's exercise of its power of eminent domain is not a "taking" for which just compensation must be awarded.

In determining just compensation for the taking of land, the courts have refused to include such items as "expenses incurred in having to readjust manufacturing operations, frustration of contract or business, loss of business, ... [because they] are deemed non-recoverable consequential damages." *Georgia Pacific Corp. v. United States*, 226 Ct.Cl. ——, —— n. 44, 640 F.2d 328, 361 n. 44 (1980); *see also United States v. 7,216.50 Acres of Land*, 507 F.Supp. 228,

235–36 (D.S.C.1980). Since an owner of property appropriated by the government "is not entitled to compensation for the loss of profits on his contracts (existing and expected) taken as a whole—that is, injury to his business—*a fortiori* he is not entitled to compensation for the loss of expected profits on a single contract." 4 NICHOLS' EMINENT DOMAIN, *supra*, § 13.33 at p. 13–238.

CONCLUSION

The defendant's motion for summary judgment is granted, and the petition is dismissed.