**GREEN INTERNATIONAL, INC.,**
**formerly known as the Argee**
**Corporation, Appellant,**

v.

**STATE of Texas, Texas Department of**
**Criminal Justice, and Board of**
**Criminal Justice, Appellees.**

**No. 3–92–637–CV.**

Court of Appeals of Texas,
Austin.

May 18, 1994.

Rehearing Overruled June 22, 1994.

---

George C. Baldwin, Lloyd, Gosselink, Fowler, Blevins & Mathews, P.C., Austin, for appellant.

Dan Morales, Atty. Gen., Julia Lacy Armstrong, Asst. Atty. Gen., Austin, for appellees.

Before POWERS, JONES and KIDD, JJ.

JONES, Justice.

Appellant, Green International, Inc., formerly known as the Argee Corporation ("Green"), brought suit against the State of Texas, Texas Department of Criminal Justice, and Board of Criminal Justice (collectively, the "State") for claims arising out of a construction project. The State filed a plea to the jurisdiction, asserting that sovereign immunity barred Green's suit. The trial court sustained the State's plea and dismissed the suit. After seeking and purportedly obtaining the State's consent, Green again filed suit against the State of Texas and the Texas Department of Criminal Justice. The State, however, disputed that consent had been given, because the Governor of Texas had vetoed the legislature's consent resolution. Accordingly, the State again filed a plea asserting sovereign immunity, and the

trial court dismissed Green's second suit. Green appeals from both dismissals.[1] We will affirm.

Green brings a total of thirteen points of error in the two appeals. In the first appeal, Green asserts that the trial court erred in dismissing the suit because (1) no evidence was presented to support the State's plea to the jurisdiction; (2) the trial court determined disputed issues of material fact without hearing evidence and without observing the procedures for special exceptions or summary judgments; (3) disputed fact issues remain regarding Green's claims for taking, breach of contract, interference, and quantum meruit; (4) the trial court erred in not filing findings of fact or conclusions of law; (5) sovereign immunity does not bar Green's taking claim; (6) sovereign immunity cannot override the constitutional requirement for open courts; and (7) sovereign immunity does not bar Green's claims for breach of contract, interference, and quantum meruit. In the second appeal,[2] Green asserts that (8) the governor's veto was ineffective because it was not executed in accordance with the procedure prescribed in the Texas Constitution; (9) the evidence is legally and factually insufficient to support a finding that the veto was effective; (10) conclusive evidence, or the great weight of the evidence, shows that the veto was invalid; (11) the veto was outside the bounds of the governor's authority; (12) the veto violated the separation-of-powers clause of the Texas Constitution; and (13) Green's causes of action override the doctrine of sovereign immunity.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1988 and 1989, Green contracted with the State to build three prison units. According to its petitions, Green fully or substantially performed all work under the contracts and, in addition, performed other work outside the contracts that the State required. Nonetheless, the State refused to pay the amounts Green claimed were due and owing.[3]

On February 3, 1992, Green filed its first suit against the State, claiming breach of contract, interference with its ability to perform under the contracts, taking without adequate compensation under the Texas and United States Constitutions, and quantum meruit. Green asserted that its right to bring suit was guaranteed by due process and by the "open courts" provision of the Texas Constitution. The State filed a plea to the jurisdiction. On October 27, 1992, the trial court dismissed Green's suit on the basis of sovereign immunity.

On May 28, 1993, the Texas House of Representatives passed House Concurrent Resolution 135 (the "Resolution"), granting Green "permission to sue the State of Texas and the Texas Department of Criminal Justice" for "breach of various contracts" enu-

1. Green's first suit, styled Green International, Inc., formerly known as The Argee Corporation vs. State of Texas, Texas Department of Criminal Justice and Board of Criminal Justice, was filed in the 167th Judicial District Court in Travis County, Honorable Mary Pearl Williams, Judge Presiding. Green appealed the dismissal of that suit to this Court in Cause No. 3–92–637–CV.

Green's second suit, styled Green International, Inc., formerly known as The Argee Corporation vs. State of Texas and Texas Department of Criminal Justice, was filed in the 299th Judicial District Court in Travis County, Honorable Margaret Cooper, Judge Presiding. Green appealed the dismissal of that suit to this Court in Cause No. 3–93–551–CV.

On December 8, 1993, this Court consolidated both appeals for all purposes and ordered the cause to proceed as Cause No. 3–92–637–CV.

2. We will refer to Green's points of error filed in the first appeal (Cause No. 3–92–637–CV) as points one through seven and to its points of error filed in the second appeal (Cause No. 3–93–551–CV) as points eight through thirteen.

3. When, as here, a plaintiff appeals from a judgment of dismissal for want of jurisdiction, we must accept as true the allegations in the plaintiff's pleadings. *Green v. Watson*, 860 S.W.2d 238, 240 n. 2 (Tex.App.—Austin 1993, no writ); *see also Hoffman v. Cleburne Bldg. & Loan Ass'n*, 85 Tex. 409, 22 S.W. 154, 155 (1893); *Laurito v. McVey*, 496 S.W.2d 656, 659 (Tex.Civ.App.—Austin 1973, no writ). Thus, for the limited purpose of determining whether the trial court had jurisdiction over Green's causes of action, we will assume the truth of the allegations of its pleadings. It should be noted, however, that the State filed a general denial, thereby placing in issue Green's allegations that the various delays and other problems Green encountered during the project were the fault of the State.

merated in the Resolution. The Texas Senate approved the Resolution on May 29, 1993. The Resolution was enrolled and duly executed by the speaker of the house, the president of the senate, the chief clerk of the house, and the secretary of the senate on May 31, 1993.

On June 9, 1993, Green filed its second lawsuit against the State, again asserting claims for breach of contract, interference with its ability to perform under the contracts, taking without adequate compensation under the state and federal constitutions, and quantum meruit. On June 20, 1993, the governor signed Proclamation No. 41–2578 (the "Proclamation"), vetoing the Resolution. The Proclamation cited the following objections as the reason for the governor's veto:

> This concurrent resolution would grant Green International permission to sue the State of Texas concerning construction contracts with the Texas Department of Criminal Justice. Due to the questionable nature of this lawsuit and the lack of appropriation to pay a judgment that might result from it, this resolution should be vetoed.

The same day, the governor delivered the Proclamation to the secretary of state. Attached to the Proclamation was a copy of the Resolution, absent its signature page, which apparently had been lost. On October 5, 1993, the trial court dismissed Green's second suit.

## DISCUSSION

### Sovereign Immunity

In its seventh point of error, Green asserts that in the first suit the trial court erred in dismissing its causes of action for breach of contract, interference, and quantum meruit because sovereign immunity should not bar such claims. Green argues that an action for breach of contract is well established at common law and that there is no justification for allowing the state immunity from suit on its contracts with private parties. Green also argues that whenever the state enters a contract, it waives all of its immunity. We disagree.

Sovereign immunity consists of two basic principles of law. First, unless waived, the state has immunity from liability. *Missouri Pac. R.R. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970); *State v. Isbell*, 127 Tex. 399, 94 S.W.2d 423, 425 (1936); *see* Tex.Civ.Prac. & Rem.Code Ann. § 107.002(b) (West Supp.1994) (legislative resolution granting permission to sue the state does not waive immunity from liability). Thus, "a state cannot be made liable to an action for the neglect or misfeasance of its officers, through which a person sustains injury, unless by statute the action is given." *City of Galveston v. Posnainsky*, 62 Tex. 118, 125 (1884). Second, the state as sovereign is immune from suit without consent even if there is no dispute regarding the state's liability. *Missouri Pac. R.R.*, 453 S.W.2d at 813; *see, e.g., Hosner v. De Young*, 1 Tex. 764, 769 (1847); *Board of Land Comm'rs v. Walling*, Dallam 524, 525–26 (Tex.1843). The doctrine bars a suit against the state unless the state has expressly given its consent to be sued. *See, e.g., Missouri Pac. R.R.*, 453 S.W.2d at 814 (statute creating navigation district stating that district can "sue and be sued in all courts of this state" is sufficient consent to sue state); Texas Tort Claims Act, Tex.Civ.Prac. & Rem.Code Ann. § 101.025 (West 1986) (person having claim under Tort Claims Act is granted permission to sue); Tex.Civ.Prac. & Rem.Code Ann. §§ 107.001–.005 (West Supp.1994) (describing effect of legislative resolution granting permission to sue state).

The state waives its immunity from liability when it enters into a contract:

> It is well settled that so long as the state is engaged in making or enforcing laws, or in the discharge of any other governmental function, it is to be regarded as a sovereign, and has prerogatives which do not appertain to the individual citizen; but when it becomes a suitor in its own courts, or a party to a contract with a citizen, the same law applies to it as under like conditions governs the contracts of an individual.

*Fristoe v. Blum*, 92 Tex. 76, 45 S.W. 998, 999 (1898). However, even though the state waives its immunity from liability when it

enters into a contract, it retains its immunity from suit. This Court has stated that:

> The impotence of private individuals to enforce through the courts their contractual rights against the state, by reason of inability to sue the state without its consent, inheres in every such contract. This impotence, however, does not affect the binding force of state obligations; nor does it deprive the Legislature of the power to delegate to an appropriate agency authority to create binding contractual obligations against the state.

*Ferguson v. Johnson,* 57 S.W.2d 372, 376 (Tex.Civ.App.—Austin 1933, writ dism'd); *see also Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 592 (Tex.App.—Austin 1991, writ denied) ("The state is still immune from suit sounding in contract, however, even though the state has consented to liability by the act of contracting."); *State v. Elliott,* 212 S.W. 695, 698 (Tex.Civ.App.—Galveston 1919, writ ref'd) ("Because of her sovereignty, the state is not amenable to the processes of courts, and cannot be sued therein, without her consent, but this in no way detracts from the proposition that she may be liable.").

We are concerned here with the State's immunity from suit, not its immunity from liability. In its first suit, Green did not allege that the State had consented to be sued. Therefore, immunity from suit deprived the court of jurisdiction over Green's claims for breach of contract, interference, and quantum meruit.

We are not unsympathetic to Green's argument that the state's immunity from suit should be deemed waived whenever immunity from liability has been waived. Nonetheless, even though the justifications for sovereign immunity have long been criticized, the waiver of sovereign immunity is a matter properly addressed to the legislature, not the courts. *University of Tex. Medical Branch v. York,* 871 S.W.2d 175, 177, 179 (Tex.1994); *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976). We overrule point of error seven.

**Article I, § 17 "Taking"**

■ In its fifth point of error, Green asserts that, in the first suit, the trial court erred in dismissing its claims against the State for taking its property without adequate compensation. *See* Tex. Const. art. I, § 17. Both parties agree that an action for just compensation for property taken for public use under the Texas Constitution is a limited exception to the doctrine of sovereign immunity. *See Steele v. City of Houston,* 603 S.W.2d 786, 791 (Tex.1980). Sovereign immunity from both suit and liability is waived under the Constitution when, pursuant to its constitutional authority, the state takes, damages, or destroys property for public use. *Steele,* 603 S.W.2d at 791; *Dillard,* 806 S.W.2d at 596; *Courtney v. University of Tex. Sys.,* 806 S.W.2d 277, 284 (Tex.App.—Fort Worth 1991, writ denied). Thus, if Green alleged a valid taking claim, sovereign immunity does not bar that claim.

■ Green alleged that its property has been unconstitutionally taken for public use without compensation because the State did not pay the amount claimed under the contract or on the basis of quantum meruit. A constitutional taking claim rests on the idea that, although the state has the right to take, damage, or use, to the exclusion of the private owner, any property it needs to fulfill a public use, the state must pay just compensation to the property owner. *Texas Highway Dep't v. Weber,* 147 Tex. 628, 219 S.W.2d 70, 71 (1949). Green asserts that the money due it under contract and quantum meruit, its contract right to payment for services rendered, and its cause of action for breach of contract constituted property taken by the State.

At least one court has considered labor, materials, and equipment used to construct buildings to be property. *See Industrial Constr. Mgmt. v. DeSoto Indep. Sch. Dist.,* 785 S.W.2d 160, 163 (Tex.App.—Dallas 1989, no writ). A cause of action also may be a property right. *Spellmon v. Sweeney,* 819 S.W.2d 206, 210 (Tex.App.—Waco 1991, no writ); *Coulter v. Melady,* 489 S.W.2d 156, 159 (Tex.Civ.App.—Texarkana 1972, writ ref'd n.r.e.), *cert. denied,* 414 U.S. 823, 94 S.Ct. 123, 38 L.Ed.2d 56 (1973). A valid contract has likewise been held to be property. *See Lynch v. United States,* 292 U.S.

571, 579, 54 S.Ct. 840, 843, 78 L.Ed. 1434 (1934).

■ It has been held that if the government were to appropriate all or part of a contract for its use, it would be obligated to pay just compensation. *Kearney & Trecker Corp. v. United States,* 231 Ct.Cl. 571, 688 F.2d 780, 783 (1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 929 (1983); *see also Lynch,* 292 U.S. at 579, 54 S.Ct. at 843. However, not every exercise of governmental power that interferes with or frustrates performance of a contract is a taking. For example, in *Kearney & Trecker Corp.,* the government expedited an order for a machine produced by Kearney & Trecker. To meet the government's requirement, Kearney & Trecker delivered a machine that was originally scheduled for a third party. As a result, the third party's machine order was substantially delayed, and the third party cancelled its order. The court held, however, that the delay in the ultimate performance of the third party's contract did not constitute a taking. Although performance of the contract was rendered impossible, no taking occurred because the contract was not appropriated for the use of the government; rather, the contract was ended. "[T]he mere frustration of a contract resulting from the government's exercise of its power of eminent domain is not a 'taking' for which just compensation must be awarded." *Kearney & Trecker Corp.,* 688 F.2d at 783; *see Omnia Commercial Co. v. United States,* 261 U.S. 502, 510–11, 43 S.Ct. 437, 438, 67 L.Ed. 773 (1923).

■ To recover under the theory that property has been taken, Green must establish that: (1) the State intentionally performed certain acts;[4] (2) which resulted in a "taking" of property; (3) for public use. *City of Abilene v. Smithwick,* 721 S.W.2d 949, 951 (Tex.App.—Eastland 1986, writ ref'd n.r.e.); *see Steele,* 603 S.W.2d at 788–92. Under the first prong of the test, a party must prove more than negligence to establish a taking claim. *Steele,* 603 S.W.2d at 790. The party must show intent to take, or at least the intent to do the act that caused the

harm. *Palacios Seafood, Inc. v. Piling, Inc.,* 888 F.2d 1509, 1514 (5th Cir.1989); *see Steele,* 603 S.W.2d at 790–91; *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 737 (1941). The rationale for this scienter requirement is the idea that negligence by government agents confers no benefit on the public. *See Palacios Seafood,* 888 F.2d at 1514. Federal authority also supports an interpretation of the federal takings clause to include an element of governmental intent. *Id.; J.D. Hedin Constr. Co. v. United States,* 197 Ct.Cl. 782, 456 F.2d 1315, 1328–29 (1972) (noting that while lack of intent to acquire property or actually effect taking is not determinative, it is proper subject of inquiry when taken together with other circumstances in determining whether there was taking).

In contractual situations, when the government acts within the procedures outlined in the contract for the withholding of materials and equipment, the government has shown no intent to take under eminent domain. *J.D. Hedin Constr. Co.,* 456 F.2d at 1329. In addition, whenever the government acts within a color of right to take or withhold property in a contractual situation, the government cannot be said to have effected a taking because there was no intent to take, only an intent to act within the scope of the contract. *Acme Process Equip. Co. v. United States,* 171 Ct.Cl. 324, 347 F.2d 509, 537–38 (1965), *rev'd on other grounds,* 385 U.S. 138, 87 S.Ct. 350, 17 L.Ed.2d 249 (1966). Even if the government were to withhold property or payment it believed to be due the other party, the government would still be acting within the color of right to the extent it had a good faith belief that its actions were justified due to disagreements over payment due or performance under the contract. *Id.*

In the present case, Green has not alleged that the State acted with the specific intent to take its property for public use. Indeed, because the basis for this suit is an alleged breach of contract, Green appears to concede that the State, while perhaps wrong about its interpretation of contractual obligations, has acted within its color of right under the

---

4. As an alternative to a showing of governmental intent, a party may show nuisance. *Steele,* 603 S.W.2d at 791. In the present case, Green has not alleged a government nuisance.

contract. Since the State contracted with Green voluntarily and has paid some monies to Green over the course of performance of the contract, the facts alleged by Green show that the State had no intent to take the buildings—the product of Green's labor, materials, and equipment—for public use under its power of eminent domain.

 Even if Green had alleged that the State had the requisite intent, Green also must establish that the State's possession was without Green's consent. Constitutional taking claims are barred if the aggrieved party consents to the damage. *See Palacios Seafood,* 888 F.2d at 1515. When an entity voluntarily enters into a contract and delivers a product to the state pursuant to that contract, the entity thereby consents to the state's possession of the product. An analogous case, *State v. Steck Co.,* 236 S.W.2d 866 (Tex.Civ.App.—Austin 1951, writ ref'd), involved a government contract with a stamp maker to produce cigarette tax stamps. Although the stamps were delivered and accepted, the government refused to make payment. This Court, in addressing the stamp maker's taking claim, stated:

> It is clear that the stamps were delivered to the State, and its possession of them was by virtue of the contract and not by virtue of a taking within the meaning of Art. 1, sec. 17, supra. Appellee by making the contract, manufacturing the stamps and delivering them to the State did so voluntarily and with its own consent, and can not now say the stamps were taken under the power of eminent domain.

*Id.* at 869.

Here, Green voluntarily entered into a construction contract with the State. Green chose to perform under the contract; indeed, it chose to perform to specifications and directions of the State outside the original agreement. In addition, Green voluntarily gave possession of the prison buildings to the State pursuant to the contract. Thus, Green's allegations affirmatively establish that it consented to the State's possession of the buildings.

Federal courts have applied a similar analysis under the United States Constitution's Takings Clause. *See* U.S. Const. amend. V.

Those courts have held there can be only limited application of the takings theory when rights have been voluntarily created by contract. *See Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978); *J.J. Henry Co. v. United States,* 188 Ct.Cl. 39, 411 F.2d 1246, 1249 (1969).

Green relies on *Industrial Construction Management v. DeSoto Independent School District* as being analogous to this case. 785 S.W.2d 160. In *DeSoto,* a school district entered into a contract for the construction of a cafeteria in one of its elementary schools. When a dispute arose over how much money was owed, the construction company sued the school district for breach of contract. The construction company had been paid some of the money due under the contract; however, deductions had been made from the original contract price for certain delays. Other sums the construction company claimed were owed also had not been paid. *Id.* at 161. The trial court granted the school district's motion for summary judgment based on sovereign immunity. On appeal, the court of appeals reversed the trial court's judgment. First, the court held that when the state enters into a contract with another party, it waives all aspects of sovereign immunity and thereby consents to suit. *Id.* at 163. Second, the court said that by not paying the full amount due, the school district unconstitutionally "took" the construction company's labor, materials, and equipment without its consent and without adequate compensation. *Id.*

We do not agree with either holding in *DeSoto.* As was recognized in *Courtney v. University of Texas System,* it is not correct to say that both aspects of sovereign immunity are waived when the state contracts with another party. 806 S.W.2d at 284. Although immunity from liability is deemed waived when the state enters into a contract, immunity from suit is still in force. *Fristoe,* 45 S.W. at 999; *Dillard,* 806 S.W.2d at 592; *Elliott,* 212 S.W. at 698. Thus, we decline to follow the *DeSoto* court's holding that sovereign immunity is wholly inapplicable to dis-

putes arising from contracts made by the state.[5]

We also decline to follow the holding in *DeSoto* that a sovereign's decision not to pay the full contractual amount results in a taking under the Texas Constitution. A proper analysis of a taking issue requires an inquiry into the measure of the state's intent to take under its sovereign powers and into the issue of consent by the complaining party.

We do not, however, necessarily disagree with the result reached in *DeSoto*. The suit was against a school district. The Texas Education Code provides, "The trustees ... in the name of the school district may ... sue and be sued...." Tex.Educ.Code Ann. § 23.26(a) (West 1987). That provision has been held to waive a school district's immunity from suit. *Missouri Pac. R.R.*, 453 S.W.2d at 814; *Dillard*, 806 S.W.2d at 594. Thus, the decision in *DeSoto* to reverse the summary judgment was apparently correct. In the present case, unlike *DeSoto*, there is no similar statutory provision waiving immunity from suit. We overrule Green's fifth point of error.

**Open Courts**

■ Green's sixth point of error asserts that the "open courts" provision of the Texas Constitution requires that it be allowed the opportunity to litigate its breach of contract and quantum meruit claims despite the doctrine of sovereign immunity. *See* Tex. Const. art. I, § 13. Green argues that sovereign immunity cannot override the constitutional requirement of open courts, so that when a conflict occurs, open access to courts for adjudication of claims against the state is required. We disagree.

■ The open-courts provision states: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. The purpose of the provision is to ensure all citizens the right to bring well-established common-law causes of action and to ensure that government action will not unreasonably abridge that right. *Castillo v. Hidalgo Co. Water Dist. No. 1*, 771 S.W.2d 633, 636 (Tex. App.—Corpus Christi 1989, no writ). The provision does not create new rights, but ensures that the courts shall be open and afford a remedy for causes of action recognized at common law. *In re B.M.N.*, 570 S.W.2d 493, 498 (Tex.Civ.App.—Texarkana 1978, no writ).

■ Texas courts have devised a test to determine whether the open-courts provision is applicable and, if applicable, whether it has been violated. Under that test, the open-courts provision guarantees a litigant's right to redress only if (1) the litigant has a cognizable common-law cause of action and (2) the restriction on the litigant's right to bring that cause of action is unreasonable or arbitrary when the effect of the restriction is balanced against its purpose and basis. *Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex.1983); *Stout v. Grand Prairie Indep. Sch. Dist.*, 733 S.W.2d 290, 293–94 (Tex.App.—Dallas 1987, writ ref'd n.r.e.), *cert. denied*, 485 U.S. 907, 108 S.Ct. 1082, 99 L.Ed.2d 241 (1988). We conclude that Green meets neither prong of the test.

First, Green's claims against the State would not have been cognizable at common law. The Texas Constitution must be interpreted in light of the common law as it stood at the time the Constitution was adopted. *Lynch v. Port of Houston Auth.*, 671 S.W.2d 954, 960 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

It is the settled law of this State that the provisions of our State Constitution mean what they meant when they were promulgated and adopted, and their meaning is not different at any subsequent time.

---

5. The Dallas Court of Appeals has recently reaffirmed its holding in *DeSoto* that the state waives both aspects of sovereign immunity when it enters into a contract. *See Texas Dep't of Health v. Texas Health Enters., Inc.*, 871 S.W.2d 498 (Tex. App.—Dallas 1993, writ denied). Interestingly, the court in *Texas Health Enterprises* cited as support for that proposition an opinion from this Court, *Ferris v. Texas Board of Chiropractic Examiners*, 808 S.W.2d 514 (Tex.App.—Austin 1991, writ denied). There is admittedly broad language in *Ferris*, but the essential holding in that case was that the Open Meetings Act, Tex. Gov't Code Ann. §§ 551.001–.146 (West 1994), waives the state's immunity from suit. Accordingly, *Ferris* does not stand for or support the proposition that the state's entering into a contract waives immunity from suit.

Constitutional provisions must be construed in the light of conditions existing at the time of adoption, and it does not lie within the power of the Legislature to change their meaning, or to enact laws in conflict therewith.

*Jones v. Ross,* 141 Tex. 415, 173 S.W.2d 1022, 1024 (1943). Sovereign immunity is a common-law doctrine; it preceded the current Texas Constitution. Thus, we must read the open-courts provision in light of the preexisting concept of sovereign immunity. We find no authority holding that the open-courts provision was intended to abolish or limit sovereign immunity. Accordingly, Green "cannot complain of an unconstitutional deprivation of a nonexistent common law vested right." *Stout,* 733 S.W.2d at 297.

Moreover, in light of the long-standing recognition of the doctrine of sovereign immunity, we would be unable to conclude that its application is an unreasonable or arbitrary restriction on Green's right to redress. *See Sax,* 648 S.W.2d at 666; *Stout,* 733 S.W.2d at 297. We overrule Green's sixth point of error.

In its thirteenth point of error, Green complains that the trial court in the second suit erred when it impliedly found that Green's claims were barred by the doctrine of sovereign immunity, because it has pleaded causes of action which override the doctrine of sovereign immunity. Green makes the same arguments under this point of error as in points of error five through seven. We believe our discussion of points of error five through seven is dispositive of this point of error. We overrule Green's thirteenth point of error.

**Plea to the Jurisdiction**

In its first point of error, Green complains that the trial court erred in dismissing the first suit because the State produced no evidence to support its plea to the jurisdiction.

■ In a suit against the state, a plaintiff generally has the burden to plead and prove that sovereign immunity to suit has been waived. *Missouri Pac. R.R.,* 453 S.W.2d at 813–14; *Walsh v. University of Tex.,* 169 S.W.2d 993, 994 (Tex.Civ.App.—El Paso 1942, writ ref'd). Without an allegation

and showing of consent to suit, the court is without jurisdiction to hear the case. *Missouri Pac. R.R.,* 453 S.W.2d at 814; *Walsh,* 169 S.W.2d at 994.

■ The State filed a verified plea to the jurisdiction in which it denied that it had consented to Green's suit. Green's pleadings did not allege consent, nor did it present evidence of consent. Although Green attempted to assert a taking claim as an exception to sovereign immunity, we have held that the factual allegations of Green's petition affirmatively negated such a constitutional claim; thus, the claims stated in Green's petition, by whatever name they may be asserted, are barred by sovereign immunity. Under these circumstances, the trial court did not err in dismissing Green's suit. *See State v. Benavides,* 772 S.W.2d 271, 274 (Tex.App.—Corpus Christi 1989, writ denied) (holding trial court did not err in granting plea to jurisdiction even though no affidavits, testimony, or exhibits were introduced to support plea). We overrule Green's first point of error.

■ In its second point of error, Green complains that the trial court in the first suit circumvented the rules of procedure governing special-exception and summary-judgment practice. We understand this point to be a complaint that the trial court determined disputed issues of fact, or that the court dismissed Green's case for failure to state a cause of action, without giving Green a chance to replead. Similarly, in its third point of error, Green complains that disputed fact issues remain regarding its claims in its first suit for taking, breach of contract, interference, and quantum meruit.

The trial court dismissed Green's case for lack of jurisdiction. The dismissal was not based on the merits of Green's case. There were no disputed issues of fact presented to the court with regard to the court's jurisdiction. Indeed, the only relevant issue was whether Green had obtained the State's consent to suit. As to its first suit, Green did not dispute that consent had not been obtained. We overrule Green's second and third points of error.

In its fourth point of error, Green complains that the trial court erred in not filing findings of fact and conclusions of law pursuant to its request. *See* Tex. R.Civ.P. 296, 297. When a trial court disposes of a case based on the allegations of the pleadings, the pleadings themselves state the facts upon which the trial court bases its ruling; hence, the trial court need not file findings and conclusions. *Green*, 860 S.W.2d at 244–45; *see Southwest Stone Co. v. Railroad Comm'n*, 173 S.W.2d 325, 328 (Tex.Civ. App.—Austin 1943, writ ref'd w.o.m.). Moreover, even where the trial court has a duty to file findings of facts and conclusions of law, its failure to do so is harmless if the record affirmatively shows that the complaining party has not suffered injury. *Green*, 860 S.W.2d at 245; *see Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex.1989); *cf. Hopkins v. NCNB Tex. Nat'l Bank*, 822 S.W.2d 353, 355 (Tex.App.—Fort Worth 1992, no writ).

There were no disputed fact issues resolved in this case. The trial court did not reach the merits of Green's case, but instead disposed of the case because there was no allegation of the State's consent to suit. The allegations of Green's petition state the facts on which the trial court determined its jurisdiction to hear the case. The record indicates that the trial court based its dismissal on the doctrine of sovereign immunity. Under these circumstances, we hold that the trial court had no duty to file findings of fact and conclusions of law; even if the trial court had had such a duty, we would hold that Green has not been harmed by the trial court's refusal. We overrule Green's fourth point of error.

### Governor's Proclamation

In points of error eight through twelve, Green asserts that the governor's Proclamation was not an effective veto of the Resolution. In its eighth point of error, Green asserts that the Proclamation was not executed in accordance with the constitutional procedure. In its ninth point of error, Green asserts that the evidence is legally or factually insufficient to support a finding that the Proclamation was effective. In its tenth point of error, Green asserts that the evi-

dence proved conclusively or by the great weight of the evidence that the Proclamation was invalid. In its eleventh point of error, Green asserts that the Proclamation was outside the bounds of the governor's authority. In its twelfth point of error, Green asserts that the Proclamation violated the separation-of-powers clause of the Texas Constitution.

The Civil Practice and Remedies Code provides that permission to sue the state may be obtained by legislative resolution. Tex.Civ.Prac. & Rem.Code Ann. §§ 107.001–.005 (West Supp.1994). Accordingly, Green sought and obtained a concurrent resolution granting it permission to sue the State. The Texas Constitution, however, contains specific prerequisites for such a resolution to become effective:

> Every order, resolution or vote to which the concurrence of both Houses of the Legislature may be necessary, except on questions of adjournment, shall be presented to the Governor, and, *before it shall take effect, shall be approved by him;* or, being disapproved, shall be repassed by both Houses, and all the rules, provisions and limitations shall apply thereto as prescribed in the last preceding section in the case of a bill.

Tex. Const. art. IV, § 15 (emphasis added). Under this section, the governor's affirmative approval is required before a resolution becomes effective; provided, however, that if such approval is not given, the resolution may be repassed by both Houses. *Id.; see Commercial Standard Fire & Marine Co. v. Commissioner of Ins.*, 429 S.W.2d 930, 934 (Tex.Civ.App.—Austin 1968, no writ). If so repassed, the procedures followed are those for enactment of a "bill" as described in section 14, article IV of the Texas Constitution:

> Sec. 14. Every bill which shall have passed both houses of the Legislature shall be presented to the Governor for his approval. If he approve he shall sign it; but if he disapprove it, he shall return it, with his objections, to the House in which it originated, which House shall enter the objections at large upon its journal, and proceed to reconsider it. If after such

reconsideration, two-thirds of the members present agree to pass the bill, it shall be sent, with the objections, to the other House, by which likewise it shall be reconsidered; and, if approved by two-thirds of the members of that House, it shall become a law.... If any bill shall not be returned by the Governor with his objections within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it....

In the present case, the governor did not approve the Resolution, regardless of whether the Proclamation was an effective veto. Thus, under section 15, the Resolution did not become effective. Moreover, the governor's refusal to approve the Resolution was surely sufficient to render it "disapproved" within the meaning of section 15. Therefore, both houses of the legislature had to repass the Resolution before it could become effective without the governor's approval. It is undisputed, however, that the Resolution was not repassed by both houses. Accordingly, the Resolution did not become effective and did not waive the State's immunity from suit.

Nonetheless, Green argues that section 14, and not section 15, of article IV of the Texas Constitution controls this case. It is obvious, however, that section 14 relates only to bills, not resolutions. Tex. Const. art. IV, § 14. "The Constitution places bills and resolutions in separate and distinct categories." *Commercial Standard Fire & Marine Co.*, 429 S.W.2d at 934. We recognize that section 15 directs that "all the rules, provisions and limitations shall apply thereto as prescribed in the last preceding section [section 14] in the case of a bill." Tex. Const. art. IV, § 15. However, section 15 specifies that those procedures are invoked only on the *repassing* of a resolution, when it has once been disapproved by the governor. *Id.* Because the Resolution here had not been repassed, section 14 procedures never came into play. Accordingly, we do not address Green's points of error eight, nine, ten, eleven, and twelve challenging the effectiveness of the governor's veto.

## CONCLUSION

We affirm the judgments of the district courts.

KIDD, Justice, dissenting.

At this critical time in our nation's history, when there is such widespread distrust of our basic institutions of government, it is a sad commentary that the majority opinion perpetuates the litany that "The King can do no wrong." Green International, Inc. ("Green") entered into a written contract with the State of Texas, the Texas Department of Criminal Justice, and the Board of Criminal Justice (collectively "the State") to construct three prison units. It is apparent from this record that Green not only has performed its obligations under the contract, but also has performed other work outside the contract at the request of the State. The State now refuses to pay Green for the work performed. Our decision today denies Green even its day in court. For the reasons herein expressed, I respectfully dissent.

## MUTUALITY OF CONTRACTUAL OBLIGATIONS

In its discussion of sovereign immunity, the majority quite properly observes that the State, by freely and voluntarily contracting with Green, has waived its immunity from liability, citing *Fristoe v. Blum,* 92 Tex. 76, 45 S.W. 998 (1898). As far back as the last century, our Texas Supreme Court held that once the State becomes a party to a contract, it loses its immunity from liability. *Id.* 45 S.W. at 999. I believe the court in *Fristoe* premised this holding on a basic cornerstone of contract law, that is, that two parties to a contract voluntarily *agree* to mutual obligations contained within the contract. Thus, the majority concedes, as it must, that the State is obligated to fully perform its payment obligations to Green under the contract. Consequently, the State may not hide behind the cloak of sovereign immunity to escape its legitimate contractual obligations. However, the majority denies Green access to the courts of Texas under the historical rubric that Green has not received *permission* from the State to bring its lawsuit. The majority relies upon this Court's opinion in

*Ferguson v. Johnson,* 57 S.W.2d 372 (Tex. Civ.App.—Austin 1933, writ dism'd), issued over sixty years ago, which states, "The impotence of private individuals to enforce through the courts their contractual rights against the state, by reason of inability to sue the state without its consent, inheres in every such contract." *Id.* at 376.

In this modern age of sophisticated commerce, why should the State be accorded an unequal position under the law regarding mutual contractual obligations? There can be no doubt that if the State chose to sue Green on the contract, the State would face no impediment to suit. Why should Green face such an impediment? Our courts have declared that when the Legislature creates an agency with the ability to "sue or be sued," the State waives its immunity from suit. *See Industrial Constr. Management v. DeSoto Indep. Sch. Dist.,* 785 S.W.2d 160 (Tex.App.—Dallas 1989, no writ). This waiver is premised on the equitable principle that if an agency is entitled to take a private citizen to court, it is only just that a private citizen have the same rights against the State. *Fristoe,* 45 S.W. at 999 (observing that when the State "becomes a suitor in its own courts," the same law applies to the State as governs a private citizen).

Based upon this rationale, I would refuse to follow *Ferguson v. Johnson.* Rather, I would hold that when the State voluntarily enters into a contract, it waives *both* immunity from liability and immunity from suit.

## OPEN COURTS PROVISION

I also do not agree with the majority's analysis of the open courts provision of the Texas Constitution, which states, "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. In the landmark case of *Sax v. Votteler,* 648 S.W.2d 661, 666 (Tex.1983), the supreme court set out a two-part test for determining a violation of the open courts provision: the litigant must show (1) "a cognizable common law cause of action that is being restricted," and (2) that "the restriction is unreasonable or

arbitrary when balanced against the purpose and basis of the statute."

The majority begins with the wrong premise, I believe. It contends that "Green's claims against the State would not have been cognizable at common law." For this proposition it cites no authority. I contend that Green's *claim* is one for simple breach of contract, which was a well-recognized common law cause of action long before the framing of the current Texas Constitution in 1875. Conversely, the doctrine of sovereign immunity is a creature of judge-made law which only became a part of the law of this state when it was first adopted by a Texas court. The majority certainly has not demonstrated to my satisfaction any authority for the proposition that, at the time of the enactment of the Texas Constitution, our courts would have absolved the State from liability for a breach of contract claim. Indeed, one of the first cases in that regard, *Fristoe v. Blum,* written in 1898, would not have extended immunity from liability to the sovereign in a contract dispute. Furthermore, the majority opinion is premised upon the immunity of the sovereign from *suit,* not from *liability.* Nowhere does the majority demonstrate that this schism involving sovereign immunity was engrafted upon our common law traditions prior to the ratification of the 1876 Texas Constitution.

Additionally, for more than a century, our Texas Supreme Court has jealously guarded access to the courts. *See Dillingham v. Putnam,* 109 Tex. 1, 14 S.W. 303, 304 (1890) ("A law which practically takes away from either party to litigation the right to a fair and impartial trial in the courts … denies a remedy by due course of law. …"); *LeCroy v. Hanlon,* 713 S.W.2d 335 (Tex.1986) (holding that the right of access to the courts is a substantive right); *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440 (Tex.1993) (holding that the constitutional guarantee of open courts is a right of access to the courts). Most recently, in *R. Communications, Inc. v. Sharp,* 875 S.W.2d 314 (Tex.1994), the Texas Supreme Court held that conditioning a taxpayer's right to initiate judicial review on the payment of taxes or the posting of a bond equal to twice the

alleged tax obligation violates the open courts provision.

For the above reasons, I would hold that denying Green's right to proceed with its lawsuit violates the open courts provision of the Texas Constitution.

## CONCLUSION

For all of the foregoing reasons, I would conclude that Green should be entitled to its day in court against the State, and I would reverse the trial court's dismissal of this case.