*Principle Homecare, LLC v. McDonald*

# United States Court of Appeals
## For the Second Circuit

August Term 2025

Argued: September 11, 2025
Decided: October 21, 2025

No. 25-466

PRINCIPLE HOMECARE, LLC, MARTON CARE INC., PROMPT
HOME CARE LLC, CARE CONNECT CDPAP, INC.,

*Plaintiffs-Appellants*,

*v.*

JAMES V. MCDONALD, in his official capacity as
Commissioner of the New York State Department of
Health,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of New York
No. 24-cv-7071, Margaret M. Garnett, *Judge*.

Before: WALKER, CARNEY, and SULLIVAN, *Circuit Judges*.

New York State's Consumer Directed Personal Assistance Program ("CDPAP") allows Medicaid beneficiaries who need help with daily living to hire their own personal assistants at public expense. Until recently, the program relied on a vast network of private organizations, referred to as "fiscal

intermediaries," to handle most of the administrative, financial, and compliance responsibilities associated with those employment relationships. But in 2024, the State amended the program, replacing the existing network of fiscal intermediaries with a single, statewide fiscal intermediary.

Plaintiffs – a group of companies that served as fiscal intermediaries under the pre-amendment CDPAP – brought suit in the United States District Court for the Southern District of New York (Margaret M. Garnett, *Judge*), alleging that the 2024 amendment violates the Takings Clause, Contracts Clause, and Due Process Clause of the United States Constitution. The district court dismissed Plaintiffs' complaint for failure to state a claim. For the following reasons, we hold that the CDPAP amendment neither effected a taking of private property nor disrupted Plaintiffs' reasonable expectations under their contracts. We also hold that the State had a rational basis for preferring a single, statewide fiscal intermediary. We therefore affirm the district court's judgment dismissing Plaintiffs' claims.

AFFIRMED.

<div style="margin-left:40%">

AKIVA SHAPIRO (Mylan Denerstein, William J. Moccia, Jason Bressler, *on the brief*), Gibson, Dunn & Crutcher LLP, New York, NY, *for Plaintiffs-Appellants*.

BLAIR J. GREENWALD, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Judith N. Vale, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, New York, NY, *for Defendant-Appellee*.

</div>

PER CURIAM:

New York State's Consumer Directed Personal Assistance Program ("CDPAP") allows Medicaid beneficiaries who need help with daily living to hire their own personal assistants at public expense. Until recently, the program

relied on a vast network of private organizations, referred to as "fiscal intermediaries," to handle most of the administrative, financial, and compliance responsibilities associated with those employment relationships. But in 2024, the State amended the program, replacing the existing network of fiscal intermediaries with a single, statewide fiscal intermediary.

Plaintiffs – a group of companies that served as fiscal intermediaries under the pre-amendment CDPAP – brought suit in the United States District Court for the Southern District of New York (Margaret M. Garnett, *Judge*), alleging that the 2024 amendment violates the Takings Clause, Contracts Clause, and Due Process Clause of the United States Constitution. The district court dismissed Plaintiffs' complaint for failure to state a claim. For the following reasons, we hold that the CDPAP amendment neither effected a taking of private property nor disrupted Plaintiffs' reasonable expectations under their contracts. We also hold that the State had a rational basis for preferring a single, statewide fiscal intermediary. We therefore affirm the district court's judgment dismissing Plaintiffs' claims.

## I. BACKGROUND

CDPAP is a statewide, Medicaid-funded healthcare program established by the State of New York. The program "is intended to permit chronically ill and/or physically disabled individuals receiving home care services . . . greater flexibility

3

and freedom of choice in obtaining such services." N.Y. Soc. Serv. Law § 365-f(1).

To that end, CDPAP enables consumers to directly hire personal care assistants, who may include friends, non-spousal family members, and other trusted individuals. These personal assistants provide a wide variety of home care services, including assistance with daily activities like toileting and bathing. There are currently around 280,000 consumers in New York who receive home care services through CDPAP.

To facilitate the compensation of personal assistants, CDPAP provides consumers with individual budgets to hire and pay their personal assistants. In enrolling in CDPAP, however, the consumer also takes on many of the administrative, financial, and compliance responsibilities associated with being an employer. Consumers, for instance, must recruit, supervise, and set the terms of employment for their personal assistants.

Prior to the amendment at issue in this appeal, CDPAP authorized a network of "fiscal intermediaries" to assist consumers in managing these responsibilities. The statute defined the term "fiscal intermediary" as an entity that provides "fiscal intermediary services" and has a contract to provide such services with the New York State Department of Health, which followed a

4

specified procurement process. N.Y. Soc. Serv. Law § 365-f(4-a)(i) (2022). These "fiscal intermediary services" encompassed most functions "performed on behalf of the consumer to facilitate the consumer's role as the employer." *Id.* § 365-f(4-a)(ii). Those functions included administrative and compliance tasks such as "wage and benefit processing for consumer directed personal assistants," "processing all income tax and other required wage withholdings," and "complying with workers' compensation, disability and unemployment requirements." *Id.* § 365-f(4-a)(ii)(A)–(C). Altogether, around 600 companies provided fiscal-intermediary services to CDPAP consumers before the at-issue amendment took effect.

As relevant to this case, Medicaid managed care organizations ("MMCOs") compensated fiscal intermediaries that provided services to consumers receiving care through CDPAP. These MMCOs are private companies that contract with states, like New York, to provide healthcare services to Medicaid beneficiaries. The MMCOs, in turn, contracted with fiscal intermediaries to provide fiscal-intermediary services to consumers. Those contracts – which all contained materially identical terms – entitled fiscal intermediaries to seek payment from the

MMCOs at a specified rate for fiscal-intermediary services provided to consumers under CDPAP.

In April 2024, Governor Kathy Hochul approved the State budget for fiscal year 2024–25, which included the CDPAP amendment at issue in this case. That amendment restructured the program by doing away with the network of dispersed fiscal intermediaries and replacing them with a single, statewide fiscal intermediary chosen by the Department of Health through a bidding process.

The amendment accomplishes that restructuring through several changes to the CDPAP statute. Among other things, the amendment strikes the preexisting definition of "fiscal intermediary" and replaces it with a new defined term, "statewide fiscal intermediary." N.Y. Soc. Serv. Law § 365-f(4-a)(a)(i). The amendment defines "statewide fiscal intermediary" as the "entity that provides fiscal intermediary services and has a contract for providing such services with the department of health and is selected through the procurement process described" elsewhere in the statute. *Id.* The amendment directs MMCOs "offering consumer directed personal assistance services to contract with the statewide fiscal intermediary . . . to provide all fiscal intermediary services to consumers." *Id.* § 365-f(4-a)(a)(ii-a). Finally, the amendment provides that, with the sole

6

exception of the statewide fiscal intermediary and its subcontractors, "no entity shall provide, directly or through contract, fiscal intermediary services" as of April 1, 2025. *Id.* § 365-f(4-a-1)(a).

Plaintiffs, each of which served as a fiscal intermediary under the pre-amendment CDPAP, filed this action on September 18, 2024, alleging that the CDPAP amendment prevents them from performing their MMCO contracts and thereby destroyed the value of those contracts in violation of the Takings Clause, Contracts Clause, and the Fourteenth Amendment's Due Process Clause. Plaintiffs also asserted a cause of action under the Equal Protection Clause of the Fourteenth Amendment based on the CDPAP amendment.

On February 26, 2025, the district court dismissed Plaintiffs' complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In particular, the district court determined that Plaintiffs had failed to plausibly allege (1) a protected property interest for purposes of the Takings Clause and the Due Process Clause, (2) that the CDPAP amendment had impaired Plaintiffs' MMCO contracts within the meaning of the Contracts Clause, and (3) that the amendment lacked a rational basis under the Equal Protection Clause. Plaintiffs

timely appealed the dismissal of their claims under the Takings Clause, Contracts Clause, and Due Process Clause.

## II.  DISCUSSION

We review *de novo* a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6), "accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff."  *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 503 (2d Cir. 2022).   To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Thus, the complaint "must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged."  *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556).

### A. Takings Clause

On appeal, Plaintiffs argue that the district erred in dismissing their regulatory takings claim.   We disagree.

8

The Takings Clause of the Fifth Amendment commands that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. As relevant here, a law regulating the use of private property amounts to a *per se* taking if the law "completely deprive[s] an owner of *all* economically beneficial use of her property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (alteration adopted and internal quotation marks omitted). All other regulatory takings claims are evaluated under the multi-factor test set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978) to determine whether the regulation "goes too far." *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) (Holmes, J.).

Under the *per se* theory or otherwise, Plaintiffs' takings claim fails at the outset because the CDPAP amendment is not a "government regulation of private property." *Lingle*, 544 U.S. at 537. Although contractual rights are forms of private property that may generally be protected by the Takings Clause, *see, e.g.*, *Omnia Com. Co. v. United States*, 261 U.S. 502, 508 (1923), the CDPAP amendment does not regulate Plaintiffs' rights in their MMCO contracts as such. The amendment does not, for instance, prevent fiscal intermediaries from demanding the payment of past-due sums or from assigning their rights under those contracts.

Nor does the amendment purport to nullify any other right that Plaintiffs are entitled to under their MMCO contracts. While it is true that the amendment "made it impossible for [Plaintiffs] to perform" their MMCO contracts going forward by requiring MMCOs to contract with the new statewide fiscal intermediary instead, the State "did not appropriate any of the rights [Plaintiffs] had under [those] contract[s]." *Kearney & Trecker Corp. v. United States*, 688 F.2d 780, 783 (Ct. Cl. 1982). Under these circumstances, "the fact that [the CDPAP amendment] disregards . . . existing contractual rights" does not "transform the regulation into an illegal taking." *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 224 (1986).

At its essence, Plaintiffs' takings claim seeks to perpetuate their participation in CDPAP as fiscal intermediaries. But given states' "traditionally high degree of control over" the existence and structure of Medicaid-funded programs like CDPAP, Plaintiffs "ought to [have been] aware of the possibility that new regulation might" affect their ability to participate in the program, and thereby "render [their MMCO contracts] economically worthless." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027–28 (1992); *see also Mitchell Arms, Inc. v. United States*, 7 F.3d 212, 216 (Fed. Cir. 1993) ("[E]nforceable rights sufficient to support a

taking claim . . . cannot arise in an area voluntarily entered into and one which, from the start, is subject to pervasive Government control." (internal quotation marks omitted)). Thus, Plaintiffs' "mere unilateral expectation" of continued participation in CDPAP "is not a property interest entitled to protection" under the Takings Clause. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980).

Indeed, while Plaintiffs' MMCO contracts provided a mechanism through which they would be paid for providing fiscal-intermediary services, that money flowed entirely from Medicaid funds provided by the State. And critically, nothing in those private agreements granted – or could have granted – Plaintiffs a perpetual right to participate in CDPAP as fiscal intermediaries or compelled the State to maintain the program in its then-existing form. *Cf. Hudson Water Co. v. McCarter*, 209 U.S. 349, 357 (1908) (Holmes, J.) ("One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them."). The ability to continue participating in CDPAP as fiscal intermediaries therefore forms no part of Plaintiffs' "group of rights inhering in [their] relation to the [MMCO contracts]." *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378 (1945).

11

Accordingly, we agree with the district court that Plaintiffs have not plausibly alleged that the CDPAP amendment effected a regulatory taking of private property.

**B. Contracts Clause**

Plaintiffs also argue that the district court erred in dismissing their Contracts Clause claim.   Again, we disagree.

The Contracts Clause prevents states from enacting any "Law impairing the Obligation of Contracts."   U.S. Const. art. I, § 10.   To determine whether a law runs afoul of the Contracts Clause, we first consider the threshold question of "whether the state law has operated as a substantial impairment of a contractual relationship."   *Sveen v. Melin*, 584 U.S. 811, 819 (2018) (internal quotation marks omitted).   That inquiry depends on "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights."   *Id.*   If these factors reveal a substantial impairment, "the inquiry turns to . . . whether the state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose."   *Id.* (internal quotation marks omitted).

Plaintiffs contend that the CDPAP amendment permanently destroyed the contractual bargain reflected in their MMCO agreements by preventing them from

12

performing those contracts. The Supreme Court, however, has declined to subject state legislation to heightened scrutiny under the Contracts Clause "simply because it has the effect of restricting, or even barring altogether, the performance of duties created by contracts entered into prior to its enactment." *Exxon Corp. v. Eagerton*, 462 U.S. 176, 190 (1983). Since virtually all commercial and economic regulation has the potential to impair the performance of preexisting contracts, such heightened scrutiny risks opening a "backdoor to *Lochner*-type jurisprudence." *Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 371 (2d Cir. 2006). We have therefore emphasized that "[t]he primary consideration in determining whether [an] impairment is substantial is the extent to which reasonable expectations under the contract have been disrupted." *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 993 (2d Cir. 1997).

Here, Plaintiffs' complaint lacks factual allegations plausibly showing that their MMCO contracts created a reasonable expectation of unending participation in CDPAP as fiscal intermediaries. Those contracts were little more than a mechanism for Plaintiffs to receive compensation for their fiscal intermediary services from Medicaid funds ultimately provided by the State. As such, the MMCO contracts necessarily depended on CDPAP's then-existing fiscal

13

intermediary structure. And as explained above, those private agreements neither granted Plaintiffs a perpetual right to participate in CDPAP as fiscal intermediaries, nor reasonably could have suggested that the State would forever maintain the program in its then-existing form. Indeed, the contracts obligated the parties to comply with all applicable laws and regulations governing CDPAP and contemplated "unilateral[] and automatic[]" amendment to account for any "changes in state law or regulation." *E.g.*, J. App'x at 95. At most, therefore, the MMCO contracts support a reasonable expectation of payment *contingent* upon Plaintiffs' ability to participate in CDPAP as fiscal intermediaries.

For these reasons, Plaintiffs failed to state a claim under the Contracts Clause.

**C. Due Process Clause**

Finally, Plaintiffs contend that the district court erred in dismissing their substantive due process claim. We remain unpersuaded.

"To establish a substantive due process violation, a plaintiff must show both (1) that [it] has an interest protected by the Fourteenth Amendment, and (2) that the statute, ordinance, or regulation in question is not rationally related to a legitimate government interest." *Winston v. City of Syracuse*, 887 F.3d 553, 566 (2d

14

Cir. 2018). Under that test, "[t]o uphold the legislative choice, a court need only find some reasonably conceivable state of facts that could provide a rational basis for the legislative action." *Molinari v. Bloomberg*, 564 F.3d 587, 608 (2d Cir. 2009) (internal quotation marks omitted). Here, it is readily conceivable that by replacing around 600 individual fiscal intermediaries with a single, statewide fiscal intermediary, the State could decrease its oversight burden. Plaintiffs have therefore failed to plausibly allege "that there is no rational connection between the [CDPAP amendment] and the promotion of public health[,] safety or welfare." *Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997).

Accordingly, Plaintiffs have failed to state a claim under the Due Process Clause.

### III. CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.

15